## NORVELL v. NORVELL.

### No. 5708.

Court of Civil Appeals of Texas. Amarillo.

April 8, 1946.

Rehearing Denied May 6, 1946.

W. E. Grimes, of Floydada, and Nelson, Brown & McCleskey, of Lubbock, for appellant.

LaFont & Tudor, of Plainview, for appellee.

STOKES, Justice.

This suit was instituted by the appellee, Elwana Norvell, against her husband, the appellant, for a divorce upon the alleged grounds of cruel treatment and outrages toward her of such a nature as to render their living together insupportable. The appellant filed an answer consisting of a general denial and appeared by counsel, but did not appear in person nor introduce any testimony. A jury was impaneled to try the case but at the close of the testimony the court instructed the jury to return a verdict in favor of the appellee and, upon the return of the verdict, judgment was entered decreeing to the appellee a divorce as prayed for by her. Appellant duly excepted to the judgment, gave notice of appeal, and presents the case in this court upon two assignments of error, in which he contends, first, that the court erred in granting the divorce, because there was no witness offered by the appellee to corroborate her own testimony relative to the alleged cruel treatment, and, secondly, that the judgment is not supported by full and satisfactory evidence, as required by Article 4632, Revised Civil Statutes 1925.

The record shows that the parties were married at Childress on September 7, 1945 and that the appellee left the home of appellant and separated herself from him on the twelfth of that month. It is further shown that at the time of the marriage the appellee was a mere child of the age of fourteen years and that she was then seven months pregnant as a result of her associations with the appellant, who was of the ripe age of sixty years.

Appellee testified that after they were married and when they returned from Childress to appellant's farm home in Floyd County they alighted from the bus at the station some three miles from appellant's home and walked the rest of the way; that in order that he might smoke a cigarette appellant required her to carry her suit case the last half mile. She said that she did all of the housework, including the cooking and washing for the entire family, consisting of appellant, his three children, and herself; that during the time she lived with the appellant he insisted upon her submission to his sexual desires at frequent intervals, both during the daytime and at night and that in her delicate condition such acts subjected her to intense pain and suffering; that she felt like her stomach would burst open, and that she begged and pleaded with him to desist and not to impose himself upon her under such circumstances, but that her importunities were of no avail. She said she requested appellant a number of times to take her to a physician but he refused to do so, stating that he had work to do; that he would not permit her to leave the house unless he was with her, not even to go to the mail box,

a few hundred yards away; that he told her the reason he married her was to avoid being sent to the penitentiary; that he constantly kept a loaded pistol under his pillow; and that he told her on one occasion if she should leave him, he had four ways to get her back. She said these acts, and the conduct of appellant generally, greatly distressed her and caused her to be afraid of him and that she cried a great deal. Under some authority or for some reason, not shown by the record, the sheriff of Floyd County went to their home and escorted appellee to her grandmother's home and she was living there at the time of the trial. The grandmother testified that when appellee came to her home she was extremely nervous; that appellant was constantly passing her home and when the appellee would see him she would request that the window shades be pulled down and the doors closed and that she frequently exclaimed: "Oh, what if he should come in here and get me!" She said that at night the appellee would talk in her sleep about appellant and cry out: "Oh, don't let him get me!" and that she cried a great deal, both in the daytime and at night.

We shall discuss the assignments of error in the inverse order of their presentation in the brief.

■ One of the grounds for divorce provided by Article 4629, Vernon's Annotated Civil Statutes is where either party is guilty of excesses, cruel treatment, or outrages toward the other, if such ill treatment is of such a nature as to render their living together insupportable. The nature and extent of acts and conduct that constitute excesses, outrages, or ill treatment are not specified by the statute, but are left to the judgment of the court or jury trying the case. Generally speaking, cruelty, as a basis for divorce, is shown where the conduct complained of consists of the willful, persistent infliction of unnecessary suffering, whether in realization or apprehension, whether of mind or body, to such an extent as to render cohabitation dangerous and unendurable. It has long been held by the courts that excessive demands by a husband concerning sexual relationships may constitute cruelty where the wife is in a delicate state of health, and, in our opinion, the excesses and unreasonable demands and impositions of the appellant with respect to that matter, as revealed by the uncontradicted testimony of the appellee in this case, standing alone, was sufficient to constitute cruel treatment, as contemplated by the statute, and fully warrant the court below in granting to appellee the divorce for which she sued. While our own courts seem not to have had this identical question before them, courts of many other jurisdictions in this country have very positively laid down the rule and followed it consistently over a long period of years. Gardner v. Gardner, 104 Tenn. 410, 58 S.W. 342, 78 Am.St.Rep. 924; McMahen v. McMahen, 186 Pa. 485, 40 A. 795, 41 L.R.A. 802; McAllister v. McAllister, 28 Wash. 613, 69 P. 119; Hines v. Hines, 192 Iowa 569, 185 N.W. 91; Rudnick v. Rudnick, 288 Mass. 256, 192 N.E. 501; Griest v. Griest, 154 Md. 696, 140 A. 590.

■ As to the delicate nature of the appellee's health, it does not require the technical knowledge of a physician to determine that a woman's health is in a delicate state when she is undergoing a state of pregnancy, especially at the stage of seven months or more. It is well known and recognized by everyone who possesses the slightest knowledge of such matters. No question as to the appellant's knowledge of it can be entertained. The record shows he was already the father of at least three children, and the slightest refinement and consideration would have impelled him to refrain from imposing his lust upon his child-wife at the times and under the circumstances he ruthlessly and relentlessly did so.

■ Appellant calls our attention to the fact that the testimony does not show he used any force or violence to accomplish his purposes. This carries the inference also that because there is no showing that appellee used force or violence to prevent and repel appellant's attentions, it may be assumed that they were not objectionable nor injurious to her. Under the circumstances of the parties it was not necessary that force or violence be shown, either of the appellant or of the appellee. Appellee protested and pathetically pleaded

with appellant to refrain from his impositions upon her, and we think that was sufficient. Acrimonious controversy or violent physical resistance on her part would probably have endangered her health still more. Ridley v. Ridley, Iowa, 100 N.W. 1122.

■ We think the facts fully justified the judgment entered by the court and that they constitute the full and satisfactory evidence contemplated by the statute. Appellant's second contention will therefore be overruled.

■ The first contention is that the testimony given by the appellee was not corroborated by other witnesses and, for that reason, the court erred in granting the divorce. The law is well settled by numerous decisions of the courts of this State that the testimony of either spouse in a divorce case need not be corroborated. The statute does not require it and there is no rule known to us which does. As we have already said, the statute does not specify the acts and conduct which establish the charge of cruelty, but leaves it to the courts to determine whether or not, upon the testimony offered, the complainant has suffered cruel treatment or outrages of the required nature. McBee v. McBee, Tex. Civ.App., 247 S.W. 588; Wynn v. Wynn, Tex.Civ.App., 251 S.W. 349; Tinnon v. Tinnon, Tex.Civ.App., 278 S.W. 288; McCullough v. McCullough, Tex.Civ.App., 20 S.W.2d 224; Lowery v. Lowery, Tex.Civ. App., 136 S.W.2d 269; Black v. Black, Tex.Civ.App., 185 S.W.2d 476; Bell v. Bell, Tex.Civ.App., 135 S.W.2d 546.

■ Even if appellant were correct in this contention, however, the rule could not be applied in this case for the reason that the testimony of appellee was amply corroborated by that of her grandmother, which we have detailed. There is no suggestion, not to say evidence, that the nervous and excited state in which appellee appeared to be when she went to the home of her grandmother was simulated or feigned. Indeed it is quite natural that an inexperienced young girl, fourteen years of age, would be cast into extreme fear and excitement by the ill use and abusive treatment appellee had received at the hands of the appellant, a man sixty years of

age, possessing, no doubt, the sophistication and bearing usual to a man of his age, approaching the latter period of life and who was the father of a family of children, some of whom were probably her seniors by many years.

As is indicated by what we have said, a careful review of the record and consideration of the contentions presented by the appellant bring us inevitably to the conclusion that no error was committed by the court below, and its judgment will therefore be affirmed.