**Jocelyn Valiquet BELL, Appellant,**

**v.**

**Francis William BELL, Appellee.**

**No. 14530.**

Court of Civil Appeals of Texas.

Houston.

April 1, 1965.

H. C. Davidson, Saub, Walker & Hammond, George L. Walker, Houston, for appellant.

Holman, Saccomanno, Clegg & Martin, and Burke Martin, Houston, of counsel, for appellee.

WERLEIN, Justice.

This suit was brought by appellee, Francis William Bell, against Jocelyn Valiquet Bell for divorce. Appellant filed an answer and cross-action but, during the trial, took a nonsuit on her cross-action. Judgment was rendered in favor of appellee for divorce based upon the jury's answers to two special issues. The jury found in answer to such issues that the acts and conduct by appellant toward appellee constituted excesses, cruel treatment or outrages of such a nature as to render their further living together as husband and wife insupportable and that appellee had not been guilty of cruel treatment toward appellant.

Appellant contends that the jury's finding of cruel treatment on her part is not supported by any evidence, that there is insufficient evidence to support such finding, and that the evidence offered in support of such issue was not full and satisfactory as required by Article 4632, Vernon's Annotated Civil Statutes of the State of Texas.

The evidence shows that appellant and appellee were married in November, 1951 and separated on December 1, 1963. Appellee testified at the trial mainly with respect to the financial problems of the parties and what he considered extravagant expenditures on the part of appellant. He was employed by Brown & Root, and at the time of the trial and for some time before received an annual salary of $25,000.00. Shortly after the parties were married he began turning over his pay checks to his

wife. He testified that he insisted that she take care of purchases for the family and bills. He retained $100.00 per month for himself to take care of his personal incidental expenses.

Appellant opened up several accounts, some with appellee's consent and some without his knowledge. She generally made purchases and paid the bills, but on occasions appellee made purchases and had the bills sent to him. He testified she objected to this. She got behind in paying some of the current bills for various living expenses and for improvements and repairs on the home, most of which he agreed to. He testified that they had numerous quarrels about the expenses which were incurred. It is not shown, however, that he ever ceased turning over his pay check to appellant or that he undertook to close the accounts and prevent her from charging things to him until shortly before he left her. There were also some arguments about which clubs they should join or in which clubs they should retain their membership. Appellee admitted that he took his turn in entertaining the people they met at dance clubs, and in buying drinks and dinners, although he did not feel financially able to do so. He resigned from the International Club mainly because of the income tax ruling. He felt he could not afford to use it. There was also some disagreement between the parties as to another club which appellant joined in order that their son, who was 10 years old, might take swimming lessons.

The evidence shows that the two major purchases made by the parties during their marriage consisted of a vacant lot, which was later sold and of the home on Looscan Lane in the River Oaks section of Houston, which cost $42,500.00. The account of which appellee complained the most was the Suniland Furniture Company account which was opened with his consent. On this account appellant expended some $250.00 more than the maximum amount she and appellee had agreed upon. In November, 1963, appellee took over the financial management of the family and closed the charge accounts at the various stores.

The evidence also shows that the separation of the parties occurred on Sunday, December 1, 1963; that at that time there was no argument or dispute or quarrel; that the parties, after attending church, had lunch together, and appellee left that afternoon for New York; that the next time appellant heard from appellee was when she received a letter advising her he would not return. He also wrote that he didn't want a divorce but wanted to live away from her awhile after he got back. Some time later at her entreaty he returned home and the parties discussed their marital problems. Appellant offered to work with him in any way possible to straighten out their financial problems.

■ Appellee was asked whether there was any possibility of any reconciliation between him and his wife, and he answered that there was none whatsoever, and that regardless of the outcome of the trial he would never live with her again. He never testified, however, that he could not live with her or that living with her would be intolerable or insupportable, nor did he testify that his wife's conduct in any way injured his health or wellbeing. There is no evidence of any physical violence or that the actions of appellant complained of were studied, deliberate, wilful or intended to injure appellee. Although mental cruelty constitutes a ground for divorce, without proof of physical violence, it must be established that such mental cruelty was inflicted wilfully or intentionally. McNabb v. McNabb, Tex.Civ.App., 207 S.W. 129; Buckner v. Buckner, Tex.Civ.App., 27 S.W. 2d 311; Golden v. Golden, Tex.Civ.App., 238 S.W.2d 619; Norvell v. Norvell, Tex. Civ.App., 194 S.W.2d 270; Humphreys v. Humphreys, Tex.Civ.App., 200 S.W.2d 453; Bartels v. Bartels, Tex.Civ.App., 227 S.W. 2d 260; Stevenson v. Stevenson, Tex.Civ. App.1964, 383 S.W.2d 92.

■ The quarrels and disputes about purchases and bills and as to which clubs

the parties would join were not sufficient to constitute grounds for divorce. There is no testimony by appellee as to the effect that such alleged conduct on the part of his wife had on his mind or sensibilities or that the alleged acts complained of endangered his health or outraged his feelings, or inflicted any mental pain or anguish on him, or that such alleged conduct on appellant's part was insupportable or unbearable.

The evidence shows that after appellant went to New York, he returned to Texas and stopped at Dallas. Apparently one Nadine was living in Dallas. She later moved to Houston. In any event, after appellee separated from appellant, and after the parties had met together and discussed their affairs, and appellant had indicated she would do whatever she could to work out their financial difficulties, appellant, on or about February 8, 1964, discovered appellee living in the apartment of Nadine in the Colonial Apartments in Houston. He testified that he had lived with her during such period which was shown by stipulation to be from January 17, 1964 to February 24, 1964. He denied that he had been intimate with her. He testified that he slept in one room and she and her four year old son slept in another room in the apartment. At such time Nadine was divorced and pregnant. After appellee moved from Nadine's apartment, he was seen with Nadine at the Champions Golf Club in Houston. For some time he carried in his wallet a picture of Nadine.

Appellee testified that on one occasion after he had left appellant, she threatened to kill him, herself, their child, and burn the house. There is no evidence that this threat was made to appellee more than the one time. Apparently it did not greatly impress appellee as indicated by the fact that he testified that he did not know when or where the threat was made, whether it was made in the home or over the telephone. It seems that he could not have taken the threat very seriously since he agreed that appellant be given custody of his son

in the divorce proceedings, and merely asked for visitation rights.

One Mrs. Satterwhite, who worked for appellee's employer, testified that she had talked to appellant after this suit was filed and that on one occasion appellant stated over the telephone that she wished appellee would have a stroke and that she believed she had a right to shoot him, and in Texas she believed she could get away with it. Mrs. Satterwhite also testified that when talking on the telephone to appellant's son, Rene, she overheard appellant say to him, "You don't have to be nice to your father tomorrow. You're going with him because you have to. He is a skunk."

Appellant admitted that she probably did make the threat to her husband the one time, but she testified that she never seriously threatened to harm him. The record does not show when the threat was made nor whether it was made before or after she discovered her husband living in the apartment of Nadine. Undoubtedly she was in a very emotional state at the time such threat was made. She also testified that she had jokingly said to Mrs. Roths that she could shoot appellant and get away with it. She never said that she would. She had no gun and didn't know how to use one. It will be observed here that these threats were made after appellee without justification had left appellant.

The foregoing accusations made by appellee concerning the conduct of appellant prior to his unjustifiable separation from her, even if taken as true, relate merely to trivial matters or disagreements which do not constitute a sufficient basis for the disruption of the marriage relation. Hyatt v. Hyatt, Tex.Civ.App., 111 S.W.2d 341; McCullough v. McCullough, Tex.Com.App. 1931, 120 Tex. 209, 36 S.W.2d 459; Burns v. Burns, Tex.Civ.App., 76 S.W.2d 821; Mayen v. Mayen, Tex.Civ.App., 177 S.W. 2d 240; Rodriguez v. Rodriguez, Tex.Civ. App., 186 S.W.2d 88.

■ The threat made by appellant to appellee after he had left her, and while she

was undoubtedly in a highly emotional state, did not impress him enough for him to remember when or where it was made. Such threat, under the circumstances of this case, does not constitute a sufficient ground for the granting of a divorce. It is our view that appellee failed to establish by full and satisfactory evidence excesses, cruel treatment or outrages that would render living with appellant unendurable or intolerable. Bradshaw v. Bradshaw, Tex.Civ. App., 293 S.W.2d 210; Allen v. Allen, Tex. Civ.App., 267 S.W.2d 911; Cantwell v. Cantwell, Tex.Civ.App., 217 S.W.2d 450; Golden v. Golden, supra; Garcia v. Garcia, Tex.Civ.App., 185 S.W.2d 227.

■ We have read the entire statement of facts and have concluded that the evidence in this case is insufficient as a matter of law to show cruel treatment under Article 4632, V.A.C.S., which provides that the decree of the court in divorce cases shall be rendered upon full and satisfactory evidence. "The requirement of full and satisfactory proof is also as applicable in the Court of Civil Appeals as it is in the trial court." Christoph v. Sims, Tex.Civ. App., 234 S.W.2d 901, writ ref., n. r. e.; Mayen v. Mayen, Tex.Civ.App., 177 S.W. 2d 240. This Court not only has the power, but it is its duty, to pass upon the issue of whether the evidence in the case is full and satisfactory, although it cannot pass upon the credibility of the witnesses. Gomez v. Gomez, Tex.Civ.App., 234 S.W.2d 941; Robinson v. Robinson, Tex.Civ.App., 235 S.W.2d 228; Christen v. Christen, Tex.Civ. App., 333 S.W.2d 472, and authorities cited.

■ The court refused to submit appellant's requested defensive issue inquiring as to adultery on the part of appellee. It is our view that circumstantial evidence was introduced which would require submission of the appellant's requested special issue upon another trial if supported by her pleadings. In Franzetti v. Franzetti, Tex. Civ.App., 120 S.W.2d 123, the court stated:

"It is conceded that adultery is generally held to be a complete defense to an action for divorce upon any ground including that of cruel treatment. 15 Tex.Jur. p. 493, § 42; 9 R.C.L. p. 390, § 183.

"This rule is not predicated upon the ground that the guilty plaintiff has committed an act constituting a statutory ground for divorce in favor of defendant. The basis is thus stated in 9 R.C.L. p. 387, § 180: 'It is a general principle of the common law that whoever seeks redress for the violation of a contract resting upon mutual and dependent covenants, to obtain success must himself have performed the obligations on his part."

To like effect, see Jones v. Jones, Tex. Civ.App., 176 S.W.2d 784, decided by this Court.

■ We are of the opinion that the court erred in holding and decreeing that the funds and interest thereon contributed by the employer of appellee to his account in the Brown & Root, Inc. Salaried Employees' Retirement Trust Plan, were the separate property of the husband. We have carefully examined the Salaried Employees' Retirement Trust Agreement of Brown & Root, Inc. and have concluded that all contributions made to such fund by appelleee and also by his employer constitute community property of himself and appellant. The deposits to appellee's account in such fund are governed by the laws of the State of Texas, and are not affected by the spendthrift provision contained in the trust agreement.

The "Plan is based upon the condition precedent that it shall be approved and qualified by the Internal Revenue Service as meeting the requirements of the Federal Internal Revenue Code and regulations issued thereunder with respect to employees' trusts so as to permit the Employer and

Participating Employees to deduct for income tax purposes the amounts of their contribution to the trustee as contributed, and so that such amounts will not be taxable to the Members as income when contributed; * * *" The approval of the Plan by the Internal Revenue Service is required for tax deduction purposes, but it has no bearing upon the community nature of the contributions that are made. Art. 15.13 of the plan provides: "This agreement and every provision thereof shall be construed and its validity determined according to the laws of the State of Texas."

The instant case is distinguishable from the case of Allen v. Allen, Tex.Civ.App., 363 S.W.2d 312, decided by this Court and relied upon by appellee. In that case the ownership in the pension was controlled by the Railroad Retirement Act, whereas in this case, the nature of the ownership of the contributions is controlled by our State laws and no federal law is involved which affects the community nature of such contributions. In our opinion, the present case is governed by the decision of the Supreme Court in Herring v. Blakeley, 385 S.W.2d 843.

It is possible and, indeed, quite probable that the trial court would have made a different division of the property of the parties to this suit had the court not labored under the erroneous impression that the contributions to the Trust Plan made by appellee's employer were his separate property. The matter of awarding attorney's fees could also possibly be affected upon another trial by a different division of the property belonging to the parties.

It seems likely that the case has not been fully developed with respect to what effect, if any, appellant's alleged conduct had upon appellee. For this reason and also because of the other matters hereinabove considered, the case will be reversed and remanded rather than rendered.

Reversed and remanded.