Jack R. FLETCHER, Appellant,

v.

Virginia FLETCHER, Appellee.

No. 14428.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 8, 1965.

Rehearing Denied Jan. 5, 1966.

Vale, Torres & Alaniz, San Antonio, for appellant.

Harry A. Nass, Jr., San Antonio, for appellee.

MURRAY, Chief Justice.

This divorce proceeding was instituted by Virginia Fletcher against her husband, Jack Fletcher. From a judgment granting his wife a divorce, custody of their three children, together with provisions for child support, and disposing of the community property, Jack R. Fletcher has prosecuted this appeal.

Appellant's point of error is as follows:

"The Court erred in granting the divorce to the Appellee in that there was not sufficient evidence to show that the Appellant was guilty of such excesses, outrages, and cruel treatment toward Appellee so as to render their further living together insupportable."

Only appellant and appellee appeared as witnesses. Virginia Fletcher testified that she could no longer live with her husband, Jack Fletcher as his wife, that their further living together as man and wife was insupportable, and when asked why she said, "Well, it's just impossible to be married to someone that really doesn't want to be married, and he wants to lead his own life, and we had * * *." She further testified that "three years ago he hit me in front of the children and knocked me out of the chair on to the floor," but since then she stayed with him so she could try to keep their home together, but she failed to do so. Since appellant left home in March, 1964, he has not returned; he has never come back to see the children. She has had the children with her since he left. While they were living together appellant spent a good deal of time at his art studio in Brackenridge Park. She further testified they had tried counseling, but that it was to no avail. Her insistence that her husband see a marriage counselor was what precipitated the last break up. She testified that Dr. Lewis told her that "Jack shouldn't never have been married in the first place. He just doesn't want to have a married life. He wants to be, what I call a 'married bachelor'. He wants a home to come to, but other than that he wants to completely lead his own life. We had no personal life. We had no family life; no religious life, and that's just in my * * * not a marriage." There were three children born to this marriage, the last on December 5, 1964, after appellant had left home in March, 1964. Appellant did not visit his wife while she was in the hospital and never came to see the child. He explained this by saying, "You don't go around where people hate you."

Appellant was called to the witness stand and testified rather fully. There was very little conflict in the evidence. He testified that he did not think he and appellee could live together amicably as man and wife. He testified that he loved his wife and children, and the reason he left was "she kept badgering me and trying to get on to me about

going to marriage counselors, and she says I was gone all the time, which is not true. I was there every night except on weekends when I went to my studio to work." He further testified that he did not want the divorce and left home because "she was driving me nuts," and he would go back home if she would take him.

The divorce here is sought on the grounds of cruel treatment, as is provided by Art. 4629(1), Vernon's Ann.Civ.Stats. The record does not show by full and satisfactory evidence that the acts complained of by appellee were a series of studied and deliberate insults and provocations as would render appellee's living with appellant unendurable or intolerable, which is required where no physical violence is shown. The only physical violence shown was condoned by appellee. Gentry v. Gentry, Tex.Civ. App., 394 S.W.2d 544; Bell v. Bell, Tex. Civ.App., 389 S.W.2d 126; Hausladen v. Hausladen, Tex.Civ.App., 388 S.W.2d 952; Stevenson v. Stevenson, Tex.Civ.App., 383 S.W.2d 92.

The rule that where there is some evidence to sustain a finding of the trial court such finding is binding on the appellate court, is not applicable in divorce cases. Art. 4632, Vernon's Ann.Civ.Stats., provides, among other things, that a divorce decree "shall be rendered upon full and satisfactory evidence," and this rule applies as much to the appellate courts as it does to the trial courts. Gentry v. Gentry, supra; Bell v. Bell, supra.

A husband and wife cannot be divorced in this State merely because they live unhappily together, or on account of marital wranglings, incompatibility, or for a trivial cause. McNabb v. McNabb, Tex.Civ.App., 207 S.W. 129.

During the trial appellant's then counsel announced in open court that he was not contesting the divorce, but a marital contract cannot be dissolved by the mutual agreement of the parties as can other civil contracts. In Sheffield v. Sheffield, 3 Tex.

79, Judge Hemphill, speaking for the Supreme Court of Texas, had this to say:

"The nature, object and important purposes of the contract should have their just influence upon the mind. The parties have pledged themselves, not only for their own happiness, but for purposes important to society, to live together during the term of their natural lives. The engagement is the most solemn and important of human transactions. It is regarded by all Christian nations as the basis of civilized society, of sound morals, and of the domestic affections; and the relations, duties, obligations and consequences flowing from the contract are so important to the peace and welfare of society, as to have placed it under the control of special municipal regulations, independent of the will of the parties. The mutual comfort and happiness of the parties are the principal, but not the only, objects of the engagement. It is intended also for the benefit of their common offspring, and is an important element in the moral order, security and tranquility of civilized society. The parties cannot dissolve the contract, as they can others, by mutual consent, and no light or trivial causes should be suffered to effect its recission. While full effect is to be given to the statute it should be remembered that, according to the experience of the most enlightened nations, the happiness of married life greatly depends on its indissolubility, and that the prospect of easy separation foments the most frivolous quarrels and disgusts into deadly animosities. Parties may not be able to live together very harmoniously, but they cannot be separated except for reasons approved of by the law. And when they know they must live together, except for causes prescribed by the law, they learn, in the language of Lord Stowell, 'to soften, by mutual accommodation, the yoke which they know they cannot shake off; they

**914**

become good husbands and wives from the necessity of remaining good husbands and wives; for necessity is a powerful master in teaching the duties it imposes.' Such construction ought to be given the statute, and such weight allowed the acts of the parties, as would effect the legislative intention; but there should not be such looseness of exposition as would defeat the beneficial objects of the marriage institution, and sunder its bonds with almost as much facility as if it were a state of concubinage, dependent alone on the will of the parties."

The judgment is reversed and the divorce denied.