**Douglas Lee SHANKLES, Appellant,**

v.

**Barbara Courtney SHANKLES, Appellee.**

**No. 4821.**

Court of Civil Appeals of Texas.

Waco.

Sept. 18, 1969.

Rehearing Denied Oct. 16, 1969.

Brown, Kennedy & Hill, Paul N. Brown, Sherman, W. T. McDonald, Bryan, for appellant.

William R. Vance, Bryan, for appellee.

## OPINION

HALL, Justice.

The defendant in a divorce action appeals from a judgment which granted the plaintiff, the wife, a divorce. The judgment also contained orders on child custody and support, visitation, property division and attorneys fees. Trial was to the court without a jury.

The parties were married in 1958. At the time of their marriage defendant was, as he presently is, a member of the United States Air Force. They have resided at various base locations. In August, 1966, they moved to Langley Air Force Base, Virginia, from Japan. They have five children.

The first and second points of error complain of the overruling of defendant's plea in abatement and motion to dismiss.

The defendant left Langley Air Force Base on a temporary duty assignment to the Far East on February 5, 1968. He did not return to the United States until the last week of July, 1968. On May 30, 1968, plaintiff physically moved to Brazos County, which is the county of this suit. She has remained there. Her original petition for divorce was filed on July 26, 1968. Shortly thereafter, defendant challenged plaintiff's qualifications to maintain the suit, alleging in his plea in abatement that plaintiff had not been a resident of the state for twelve months and the county of suit for six months, as required by Article 4631, Vernon's Annotated Texas Civil Statutes, when she filed her petition.

The evidence of the hearing on the plea in abatement shows that defendant was reared in Grayson County, Texas; that he was a resident of Texas when he entered the military service; that he owns an interest in realty in Grayson County; that he has always listed Sherman, Grayson County, Texas as his permanent address in his military records; that he and plaintiff have always kept their Texas Drivers' Licenses current, and registered their automobiles in Texas; that they have maintained their only checking account and done their "everyday banking business" in a bank at Sherman; and that their income tax returns have been filed with the Office of Collector of Internal Revenue that services Grayson County. Defendant testified that he has always intended to serve 20 years with the Air Force, then retire and "go back to the farm" in Grayson County where he "grew up" and work cattle, there, on land owned by his father.

Article 4631 provides that a citizen of Texas who has been absent from the State for more than six months because of military service is entitled to sue for divorce in this state and in the county in which he had his residence before enter-

ing the service. Moreover, as shown above, there is probative evidence in the record that, while in military service, defendant considered and intended that Texas should be the state of his permanent residence. See Jones v. Jones (Tex.Civ. App., 1943, no writ hist.), 176 S.W.2d 784, 786; Bough v. Bough (Tex.Civ.App., 1953, no writ hist.), 263 S.W.2d 573, 574. Generally, before separation, a wife's domicile follows that of her husband. Wood v. Wood, 159 Tex. 530, 320 S.W.2d 807, 812. Thus, the record supports the implied finding of the trial court that plaintiff had been an inhabitant of Texas for a period of twelve months immediately preceding the filing of her original petition, as required by Article 4631.

It is true that plaintiff had not resided in the county of suit for six months when she filed this suit. However, under the record, we fail to see how the defendant was prejudiced by the trial court's ruling on his plea in abatement. Trial was not had until after plaintiff had filed her second amended original petition on December 3, 1968, and defendant had filed his first amended original answer on January 7, 1969. By the time of the filing of her trial pleading, plaintiff had actually resided in the county of suit for more than six months.

It seems to be the settled rule that if an amended petition is filed after the petitioner for divorce has resided in the county of suit for six months, but before a hearing on the merits, then the requirement in question of Article 4631 has been satisfied, even though the original petition was filed before six months' residence qualifications had been met by the petitioner. Myers v. Myers (Tex.Civ.App., 1948, no writ hist.), 210 S.W.2d 832, 833; Ingram v. Ingram (Tex.Civ.App., 1964, writ dism.), 380 S.W.2d 666, 670.

Defendant's motion to dismiss was filed during the hearing on the merits, and alleged as its only ground that the plaintiff had not been a resident of the state for twelve months immediately prior to the filing of her second amended original petition. From what we have said in relation to the trial court's ruling on the defendant's plea in abatement, it is apparent that the trial court correctly denied the motion to dismiss.

The first two points of error are overruled.

The contention is made in the third point of error that the evidence is not sufficient to support the judgment of divorce.

Plaintiff based her action for divorce on the general allegation in her pleadings that *"prior to the time when plaintiff separated from defendant * * * on February 5, 1968, * * * defendant was guilty of excesses, cruel treatment and outrages toward plaintiff of such a nature as to render their further living together insupportable."*

The record contains a complete statement of facts as well as findings of fact and conclusions of law.

Most of the testimony upon which the trial court based findings of misconduct by the defendant was very general. Some of it was equivocal. The plaintiff testified that "through the years, Doug has expected me—as far as the subject of money, it was always 'use as small amount as possible.' In order even to buy anything other than groceries or what-not, it was necessary to justify the purchase; regardless of whether it was a new appliance or anything as large as a stereo set, it was necessary to justify the purchase. As far as our social activities, as far as anything for myself, it was expected that I ask, in so many words, 'Do you mind if I—?' He was domineering in the aspect that he wanted actually no one to visit in our home or to go out for dinner or anything like this, and this has been all through the years. * * * Doug never actually not welcomed anyone in our home except very few instances, but for the most part it was after they would leave. He would spend the next thirty minutes discussing what

was wrong with them, and you cannot ask someone else back in your home that your husband does not like or what not." When asked "whether or not disputes arose between you and your husband over the fact that you wished to engage in other activities that the officers' wives normally engaged in," plaintiff responded, "Well, there was never so many words, because I knew that—I don't like to argue; therefore, if I went to too many wives' club activities or played bridge too much or what-have-you, there would be disagreement about it, so I tried to use as much judgment as possible in order not to go too often or go to too many places that he would object to. What I actually mean is, I think it is more that if a couple cannot have companionship and enjoy pleasures with each other, they must find social activities or an outlet for themselves, and when you have neither of those, you have no marriage, no basis for a relationship for the two of you. I did not have either of those." Plaintiff testified that the defendant "generally found fault about everything—the way I cooked, the way I kept house, the way I managed the children. He felt that I wore too much make-up, that, as I said, well, about keeping house or cooking or things like this, he was very critical." She testified, "The whole bit of it is that through the years there has been no consideration, no concern, or care for anything that I have wanted to do or any consideration of me or for the children, and therefore, there was no hope of his ever caring for us at all, so there was no reason to go on with the marriage."

Plaintiff admitted that defendant has always been very close to the children and that "for the two hours he is at home before they go to bed, you can say he has tried to be a good father."

Plaintiff stresses a disagreement between the parties in November and December, 1967, over the purchase of Christmas presents, it being the desire and intention of the defendant to limit the number of gifts, and the attendant expense, to the barest minimum. The record shows, as found by the trial court, that this is an annual dispute between plaintiff and defendant. Plaintiff testified, "Doug, each year, for all the years we have been married, has been quite—well, he has always expected me to buy very little, not only for our family, but for the children. Christmas, birthdays and what-have-you mean nothing to him; therefore, it is unnecessary to have any expenditures at all. It had reached the point over several weeks that I told Doug, 'all right, that I would return all the Christmas gifts and I would call his parents and my parents and explain that we were not going to exchange gifts.' "

Plaintiff points to an event that occurred early in December, 1967, upon which the trial court based a finding that "defendant expressed his dissatisfaction to plaintiff with plaintiff's actions in their marital relations in such a manner as to embarrass and humiliate plaintiff." The plaintiff testified that on this single occasion during the marriage that the defendant was unable to have sexual relations, he made a "sarcastic remark" to plaintiff, about which she testified specifically, that was critical of the manner in which she had kissed him. This happened only the one time, in the privacy of their home, with no one else present. Shortly after the remark, defendant apologized to her. She refused his apology, telling him that "this ended the marriage, the marriage is over." Nevertheless, later that month, according to plaintiff's admission, the parties engaged in an act of sexual intercourse.

Defendant testified that he spent all of his time, when not working, with his family; that his departure on February 5, 1968, was "very normal," at which time he kissed his wife goodbye and told the children goodbye; that while he was gone he and plaintiff corresponded, with each writing two or three letters a week which were "just as normal as they could be;" that plaintiff ended her letters with "love"; that he "did not suspect anything being wrong at all;" that plaintiff never gave

him any indication that she was unhappy with the marriage.

The trial court found that defendant's conduct toward plaintiff "produced a mental distress and anguish in plaintiff, amounting to an insupportable burden to this plaintiff."

There is no evidence in the record that the acts complained of had any substantial effect upon the prevailing condition of plaintiff's general health, mental or physical. She did not testify that any conduct on the part of the defendant was insupportable or unbearable. The record does not show that plaintiff ever called upon the defendant to change his actions or attitude toward her as a condition of preserving their marriage. She testified that she and defendant did not argue or scream at each other, but simply had "discussions" of their problems.

■ With the exception of a relatively insignificant incident during the first few months of their marriage, there has been no physical violence between the parties. There is no suggestion in the record that defendant has engaged in a course of studied, willful or deliberate conduct toward plaintiff that was designed to vex or harass her. While mental cruelty constitutes a ground for divorce, without proof of physical violence it must be established that such mental cruelty was inflicted willfully or deliberately. Gentry v. Gentry (Tex. Civ.App., 1965, no writ hist.), 394 S.W.2d 544, 546.

■ "Cruel treatment" is not established by a showing of trivial matters or disagreements. Gordon v. Gordon (Tex. Civ.App., 1962, no writ hist.), 359 S.W.2d 134, 136; nor by a showing of quarrels and disputes about purchases and bills and social activities of the parties; Bell v. Bell (Tex.Civ.App., 1956, no writ hist.), 389 S.W.2d 126, 128. The parties cannot be divorced for incompatibility, or because they live unhappily together, or merely because of marital wrangling. Hausladen v. Haus-

laden (Tex.Civ.App., 1965, no writ hist.), 388 S.W.2d 952, 956; Ritch v. Ritch (Tex.Civ.App., 1951, no writ hist.), 242 S. W.2d 210, 213. Equivocal testimony tending only to establish grounds, and mere conclusions characterizing unspecified conduct are not sufficient to support a divorce decree. Schyrock v. Schyrock (Tex.Civ. App., 1962, no writ hist.), 353 S.W.2d 50, 51.

■ We have carefully reviewed the entire record. We are unable to find full and satisfactory evidence that, prior to the separation of the parties, the defendant was guilty of excesses, cruel treatment or outrages toward plaintiff that would render their further living together insupportable.

Appellant's third point of error is sustained. We do not reach appellant's fourth point, which presents a question of condonation.

Our review of the record convinces us that the evidence was not fully developed in the trial court. We therefore remand the case.

Reversed and remanded.