In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00028-CV


______________________________





IN THE MATTER OF THE MARRIAGE OF FREDA RICE AND H. E. RICE AND
IN THE INTEREST OF EVEREDA JANENE RICE, A CHILD





 


On Appeal from the 76th Judicial District Court


Morris County, Texas


Trial Court No. 20,792




 



Before Morriss, C.J., Ross and Grant*, JJ.


Opinion by Chief Justice Morriss



________________________

*Ben Z. Grant, Justice, Retired, Sitting by Assignment




O P I N I O N



 H. E. Rice (husband) appeals the trial court's division of the marital estate between H. E. and
Freda Rice. H. E. does not dispute the award of joint custody of their minor daughter, nor does he
contest the grant of $400.00 per month in child support. H. E. instead challenges the lower court's
admission of expert testimony regarding property valuation, the judgment attributing fault to him,
and the legal and factual sufficiency of the evidence supporting the division of the marital estate.

 Freda and H. E. were married on December 5, 1975. They last resided in Morris County,
Texas, where H. E. owned a furniture store and Freda was a stay-at-home mother to their third child,
Evreda. The couple's other two children no longer lived in the household. The couple separated
when Freda filed for divorce.

A. TRAP 34.6(c)(1) - Partial Reporter's Record.

 H. E. requested a partial reporter's record to prosecute this appeal. The request for this partial
record is set forth as follows:

H. E. Rice has filed a Notice of Appeal in the above-referenced matter. Accordingly,
I request that you prepare an original reporter's record of the trial which started on or
about: August 3, 2001, limiting it to the testimony of Freda Rice and Michael Davis,
the expert who testified regarding the value of marital property. In addition, please
include all objections made by me during the testimony of either of these individuals,
with discussion; and the Court's ruling thereon, together with the Court's ruling after
the close of testimony. 


Thank you in advance for your services.


 At oral argument, H. E. conceded the fact that the four corners of his request did not set forth
the specific points of error he intended to raise on appeal. In her brief and at oral argument, Freda
contends H. E.'s failure to list his points of appeal in the request for a partial reporter's record entitles
her to the presumption that the absent portions support the judgment. 

 "If the appellant requests a partial reporter's record, the appellant must include in the request
a statement of all points or issues to be presented on appeal and will then be limited to those issues." 
Tex. R. App. P. 34.6(c)(1). Absent compliance with the rule, "we must presume that the omitted
portions of the record are relevant to this appeal and that the missing evidence supports the trial
court's judgment." Hilton v. Hillman Distrib. Co., 12 S.W.3d 846, 848 (Tex. App.-Texarkana 2000,
no pet.) (citing CMM Grain Co. v. Ozgunduz, 991 S.W.2d 437, 439-40 (Tex. App.-Fort Worth 1999,
no pet.)); see also In re R.C., 45 S.W.3d 146, 148 (Tex. App.-Fort Worth 2000, no pet.) (appellant's
failure to designate issues for partial reporter's record requires appellate court to presume omitted
portions support judgment rendered below).

 H. E. asks this Court to look to his motion for new trial to determine compliance with the
requirements of Rule 34.6(c)(1). He cites Greenwood v. State, 802 S.W.2d 10 (Tex. App.-Houston
[14th Dist.] 1990), aff'd, 823 S.W.2d 660 (Tex. Crim. App. 1992), and McDaniel v. Yarborough, 866
S.W.2d 665 (Tex. App.-Houston [1st Dist.] 1993), rev'd on other grounds, 898 S.W.2d 251 (Tex.
1995), in support of his theory that the reviewing court may look beyond the four corners of the
record request to determine compliance. 

 In Greenwood, the Houston Fourteenth Court of Appeals upheld a criminal defendant's
decision to appeal based on a partial record. Greenwood listed his specific point of error in his
request for a partial record and complied with all the other requirements of former Rule 53(d). (1) 
Greenwood, 802 S.W.2d at 11. Greenwood then asked the reporter to transcribe only portions of
the record from the hearing on the motion for new trial. Read carefully, Greenwood does not stand
for the proposition that one may look to a motion for new trial to determine compliance with Rule
34.6(c)(1). Instead, Greenwood acknowledges that a criminal defendant may prosecute an appeal
based on a limited record if the defendant first complies with all the other requirements of the Texas
Rules of Appellate Procedure.

 In McDaniel, the First Court of Appeals found McDaniel had substantially complied with
former Rule 53(d) by stating in open court, during the hearing on the motion for new trial, his
specific points of error to be raised on appeal, and opposing counsel stipulated to those points. 
McDaniel, 866 S.W.2d at 668. 

 In the case at bar, there is no evidence before this Court that H. E.'s counsel listed his specific
points of appeal in open court during any hearing before the trial court. Freda's counsel informed
this Court he did not know what points of error would be raised until H. E. filed his brief with this
Court. And there is no evidence before this Court that Freda's counsel stipulated, during the hearing
on the motion for new trial, to the points of error now raised on appeal. McDaniel is thus factually
distinguishable.

 In the case at bar, H. E.'s request for a partial reporter's record fails to list the issues he will
present on appeal. Freda correctly notes that H. E. has not complied with the requirements of Rule
34.6(c). Therefore, we must presume those portions of the record not requested support the trial
court's judgment. Brown v. McGuyer Homebuilders, Inc., 58 S.W.3d 172 (Tex. App.-Houston [14th
Dist.] 2001, pet. denied); R.C., 45 S.W.3d at 148; Hilton, 12 S.W.3d at 848.

B. Expert Testimony.

 We next consider whether the lower court erred by permitting Michael Davis to testify as an
expert witness on the valuation of the couple's real property. A two-part test governs the
admissibility of expert testimony: (1) the expert must be qualified, and (2) the testimony must be
relevant and based on a reliable foundation. Tex. R. Evid. 702; Keo v. Vu, 76 S.W.3d 725, 730
(Tex. App.-Houston [1st Dist.] 2002, no pet. h.). The trial court has broad discretion regarding
admissibility of expert testimony and should be reversed only if it abused its discretion. Keo, 76
S.W.3d at 730. 

 1. Davis' Qualifications.

 In this case, Davis testified he is a licensed realtor and has been engaged in that profession
for eighteen years. He has participated in many sales and purchases of real estate, both for others
and for himself. He has appraised real property for American National Bank since 1991 and serves
on the Titus County Appraisal Board. He has also evaluated property in other divorce cases and had
those valuations relied on by the litigants. Davis testified that during his career he has completed
several continuing education courses on determining fair market value. Finally, the trial court took
judicial notice of the fact that it routinely appoints Davis on condemnation cases in Titus County. 
Given these facts, we cannot say the trial court abused its discretion by qualifying Davis as an expert
witness based on his education, training, experience, and expertise.

 2. Testimony's Relevance and Foundation.

 According to the Appraisal Institute, an 18,000 member organization of professional real
estate appraisers, there are three methods professional appraisers use to determine property value: 
the sales comparison approach, the cost approach, and the income capitalization approach. The
Institute recommends that, where appropriate, all three methods be used.

The sales comparison approach is used to compare sales of similar properties, taking
into account differences among properties that may affect value. The sales
comparison approach is typically the most applicable method of valuing single-family
houses, townhouses and condominiums. 


. . . .

The cost approach is based on the current cost of replacing or reproducing a property. 
After estimating the cost of building the structures on a property, and deducting an
amount for depreciation, the appraiser adds the estimated value of the land and arrives
at an indication of value. This method is particularly useful for estimating insurable
value.


. . . .


The income capitalization approach is based on a property[']s potential rent. This
method is obviously most useful for valuing income-producing properties, but it can
be applied whenever rental figures from similar properties indicate what potential
rental income would be if [the] property was leased.


Appraisal Institute, Estimating Home Value 5-6 (2002).

 Davis testified regarding his valuation of several pieces of real property in the Rices'
marital estate. He believed the couple's duplexes were worth a combined total of $55,000.00,
the furniture store was worth $275,000.00, the apartments were worth $180,000.00, the home
was worth $32,500.00, and the quadraplex was worth $29,000.00. He based his opinions on
attached land values, condition of the buildings, income potential, as well as current market
prices for similar properties in the surrounding areas. Davis based his appraisal of other
pieces of property using similar criteria. From this evidence, it appears Davis used the sales
comparison approach to evaluating property value. We cannot say the trial court abused its
discretion in finding Davis' testimony to be based on a reliable foundation. Furthermore,
where the trial court must divide property in an equitable fashion, value will indubitably be
relevant. Thus, the trial court did not abuse its discretion in qualifying Davis as an expert
trial witness. H. E.'s point of error is overruled.

C. Cruelty.

 In four separate points of error, H. E. challenges the legal and factual sufficiency of
the evidence, the trial court's application of the appropriate standard of proof, and the trial
court's implementation of the appropriate definition of "cruelty." Because these issues are
inherently related, we shall discuss them together.

1. The Standard for Cruel Treatment.

 Although infrequently used since the introduction of no-fault divorce, a Texas court
may still grant a divorce on the ground of cruel treatment. Henry v. Henry, 48 S.W.3d 468,
473 (Tex. App.-Houston [14th Dist.] 2001, no pet.). A spouse's conduct rises to the level
of cruel treatment when his or her conduct renders the couple's living together insupportable. 
Id. (citing Tex. Fam. Code Ann. § 6.002 (Vernon 1998); Finn v. Finn, 185 S.W.2d 579, 582
(Tex. Civ. App.-Dallas 1945, no writ)). "Insupportable" means "incapable of being borne,
unendurable, insufferable, intolerable." Id. (citing Cantwell v. Cantwell, 217 S.W.2d 450,
453 (Tex. Civ. App.-El Paso 1948, writ dism'd)). Mere disagreements or trifling matters
will not justify granting a divorce for cruelty. Shankles v. Shankles, 445 S.W.2d 803, 807
(Tex. Civ. App.-Waco 1969, no writ). If, for instance, the complaining spouse suffers only
nervousness or embarrassment, a trial court may not grant the divorce on the ground of
cruelty. Golden v. Golden, 238 S.W.2d 619, 621 (Tex. Civ. App.-Waco 1951, no writ). 
Abuse need not be limited to bodily injury; nonetheless, physical abuse will support granting
a divorce on cruelty grounds. Waheed v. Waheed, 423 S.W.2d 159, 160 (Tex. App.-Eastland
1967, no writ); Cote v. Cote, 404 S.W.2d 139, 140 (Tex. App.-San Antonio 1966, writ
dism'd); Blackburn v. Blackburn, 163 S.W.2d 251, 255 (Tex. App.-Amarillo 1942, no writ). 
Acts occurring after separation may be used to support a finding of cruelty. Redwine v.
Redwine, 198 S.W.2d 472, 473 (Tex. Civ. App.-Amarillo 1946, no writ). 

2. The Standard of Proof at Trial.

 The evidence of cruelty presented at trial must be supported by "full, clear, and
satisfactory evidence." Hunt v. Hunt, 456 S.W.2d 243, 244 (Tex. App.-Corpus Christi 1970,
no writ).

3. The Standard of Review on Appeal.

 a. Abuse of Discretion.

 The sufficiency and weight of the evidence necessary to prove cruelty under the trial
court's standard of proof must, of necessity, be left to the sound discretion of the trier of fact. 
Id. We shall not disturb the trial court's finding of cruelty absent abuse of discretion. Id. In
a divorce proceeding, one party's testimony may alone be sufficient to support the judgment. 
Henry, 48 S.W.3d at 474 (finding husband's testimony, by itself, would support trial court's
judgment and therefore no abuse of discretion); Ingram v. Ingram, 376 S.W.2d 888, 888-89
(Tex. Civ. App.-Waco 1964, no writ) (wife's uncorroborated testimony satisfies test for
sufficiency). We must also indulge in "every reasonable presumption" in favor of a proper
exercise of discretion by the trial court in dividing the marital estate. Thompson v.
Thompson, 380 S.W.2d 632, 636 (Tex. Civ. App.-Fort Worth 1964, no writ).



 b. Legal Sufficiency Standard.

 When reviewing the record to determine whether there is legally sufficient evidence
to support the judgment, we examine only the evidence and inferences that support the
verdict. Minn. Mining & Mfg. Co. v. Nishika Ltd., 953 S.W.2d 733, 738 (Tex. 1997); Henry,
48 S.W.3d at 474. If more than a scintilla of evidence exists to support the lower court's
finding, the legal sufficiency challenge fails. Minn. Mining & Mfg. Co., 953 S.W.2d at 738;
Henry, 48 S.W.3d at 473. "More than a scintilla of evidence exists where the evidence
supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." Henry, 48 S.W.3d at 473 (citing Merrell Dow
Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)).

 c. Factual Sufficiency Standard. 

 In a factual sufficiency review, we examine all the evidence in the record, both for
and against the lower court's findings, and reverse only if it is so against the great weight of
the evidence as to be clearly wrong and unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.
1996). 

 d. Application.

 In this case, Freda testified H. E. had been physically abusive on several occasions. 
The first instance occurred in 1978 when Freda was pregnant with the couple's first child. 
H. E. struck Freda's face and body several times with his open hand; there is no evidence in
the record that he was provoked or that H. E.'s conduct was attributable to self-defense. 
Several years later, Freda asked H. E. for money after he came home from work. H. E. again
became angry and knocked Freda around the kitchen. He also choked her. According to
Freda, the couple's children witnessed this second incident. 

 A third altercation occurred when the couple lived at Wildwood Apartments in
Daingerfield. When asked about certain financial matters, H. E. became angry, threw Freda
onto the floor, pinned her down on the floor, yelled at her, and spit on her. More recently,
H. E. physically kicked Freda out of the couple's bed after Freda refused H. E.'s romantic
overtures. 

 H. E. contends none of these instances should support a finding of cruelty because
they occurred in the past and did not immediately lead to Freda's decision to file for divorce. 
Even if we were to agree with H. E. on this point, there is evidence of physical abuse after
the separation. In April 2001, H. E. hit Freda in her face as she stood in front of H. E.'s
apartment. Acts of physical abuse occurring after the separation may be used to support a
finding of cruelty. Redwine, 198 S.W.2d at 473. Thus, Freda's testimony presented evidence
from which the fact-finder could have reasonably concluded H. E.'s physical abusiveness
made the marriage insupportable. See Havner, 953 S.W.2d at 711. Additionally, we must
presume the remainder of the omitted record supports the trial court's findings. Tex. R. App.
P. 34.6(c)(1). We find the evidence sufficient to support the trial court's finding of cruelty
and overrule H. E.'s legal sufficiency challenge.

 At H. E.'s request, the reporter's record in this case includes only the testimony of
Freda's expert and that of Freda herself. Given the presumption required by Rule 34.6(c)(1)
that the remainder of the reporter's record supports the trial court's findings, we cannot say
the lower court's judgment goes against the great weight of the evidence. Accordingly, we
overrule H. E.'s factual sufficiency challenge.

D. Inequitable Distribution. 

 Finally, H. E. contends that, because the evidence is factually and legally insufficient
to support the trial court's finding of cruelty, the lower court's judgment must be reversed so
that a no-fault divorce may be granted. Alternatively, he suggests the distribution of the
marital estate is still unfair even if the cruelty allegation is supported. He mainly complains
the trial court awarded all the income-producing properties to Freda. 

 We have overruled H. E.'s contentions regarding factual and legal sufficiency. 
Therefore, we cannot say the trial court abused its discretion by dividing the property based
on its finding of cruelty. The question then becomes whether the actual distribution is "just
and equitable" in light of the lower court's findings.

 A trial court must divide the marital estate in a manner it deems "just and right,
having due regard for the rights of each party and any children of the marriage." Tex. Fam.
Code Ann. § 7.001 (Vernon 1998). A trial court has wide latitude and discretion in dividing
the community estate of the parties. Dawson-Austin v. Austin, 920 S.W.2d 776, 794 (Tex.
App.-Dallas 1996), rev'd on other grounds, 968 S.W.2d 319 (Tex. 1998) (citing Vallone v.
Vallone, 644 S.W.2d 455, 460 (Tex. 1983)). The appellate court should presume the trial
court exercised its discretion properly. Id. "The trial court's exercise of discretion in
dividing the marital estate will be disturbed on appeal only where, after reviewing the entire
record, it appears the division was so unfair and unjust as to constitute an abuse of
discretion." Id. (citing Vallone, 644 S.W.2d at 460; Belz v. Belz, 667 S.W.2d 240, 245 (Tex.
App.-Dallas 1984, writ ref'd n.r.e.)). 

 The trial court must examine the entire case to determine what is "just and right" in
distributing the marital estate. Id. It should consider each spouse's individual earning
capacity, business experience, the benefits which the innocent party would have derived from
continuing the marriage, the present and future business opportunities, the parties' respective
education levels, the health of each spouse, relative financial obligations, age, the size of the
separate estates, the probable need for future support, and the nature of the property being
divided. Id.; Walston v. Walston, 971 S.W.2d 687 (Tex. App.-Waco 1998, pet. denied);
Pletcher v. Goetz, 9 S.W.3d 442 (Tex. App.-Fort Worth 1999, pet. denied). The trial court's
division need not be equal, and each case should be examined on its own facts to determine
whether unequal distribution was justified. Id. The trial court may also consider any
evidence of dishonesty, fraud, or intent to deceive regarding the community's assets when
making its division of the estate. Schlueter v. Schlueter, 975 S.W.2d 584, 588 (Tex. 1998).

 In this case, the evidence suggests H. E. has a higher future earning capacity than
Freda. Freda was a stay-at-home wife through most of the marriage. Her last paying job
outside the home was over twenty years ago when she helped the local soil and water
conservation district with survey work. After having children, Freda occasionally worked
odd jobs, such as selling the eight head of cattle she inherited or selling scrap lumber she had
recovered from an abandoned building. She used this money for household necessities such
as food, utility bills, home repairs, and clothing. She completed twelve hours of college
before their marriage, but never returned to finish her degree. There is nothing in the record
before us to indicate Freda had any specialized job skills which would enable her to seek
employment sufficient to support herself and her daughter. 

 H. E., on the other hand, worked eleven years during the marriage as a skilled
millwright, making between $12.00 and $24.00 per hour before going into the furniture
business. H. E. still had his millwright tools, and there was evidence that starting pay for a
millwright at Lone Star Steel was $16.45 per hour. He had also owned a furniture store. 
Presumably, as part of that experience, he gained special knowledge that would enable him
to return to that line of work, either as an owner or as an employee of another furniture store. 
Therefore, it appears from the record H. E. has a disproportionately higher future earning
capacity than Freda, given his work experience, specialized skills, and future business and
employment opportunities.

 The record also demonstrates a need for Freda to have means for supplementing her
income. First, she was awarded the managing conservatorship of the couple's youngest child. 
The child will certainly have additional financial needs as she prepares for adulthood. 
Second, it does not appear Freda's future earning capacity will be as high as H. E.'s, given
Freda's lack of work experience, specialized job skills, or advanced educational level. Third,
there was evidence H. E. had used Freda's MasterCard without her knowledge. H. E. also
obtained and used other credit cards in Freda's name without her knowledge. When H. E.
later failed to pay these bills on time, Freda's credit rating was ruined. Thus, Freda might be
able to mortgage non-income-producing properties only at higher interest rates than she
might otherwise have been able to obtain had H. E. not ruined her credit. We cannot say the
trial court abused its discretion by awarding the income-producing properties  to  Freda  to
 offset  the  disparity  in  earning  capacity  or  as  a  means  of  compensating for H. E's
unauthorized use of Freda's credit cards. See Toles v. Toles, 45 S.W.3d 252 (Tex.
App.-Dallas 2001, pet. denied). H. E.'s final point of error is overruled.

 Even if we found the evidence insufficient to support a finding of cruelty, the trial
court still had wide latitude to make a just and equitable distribution of the community
property. Given the evidence in the appellate record of the disproportionate future earning
capacity and the present and future needs of the child, we cannot say the trial court abused
its discretion in its division of the marital estate.

 Finding no error in the judgment below, we affirm the trial court's judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 15, 2002

Date Decided: January 9, 2003


Publish
1. Former Rule 53(d) of the Texas Rules of Appellate Procedure provided, 


 If appellant requests or prepares a partial statement of facts, he shall
include in his request or proposal a statement of the points to be relied
on and shall thereafter be limited to such points. If such statement is
filed, there shall be a presumption on appeal that nothing omitted
from the record is relevant to any of the points specified or to the
disposition of the appeal. Any other party may designate additional
portions of the evidence to be included in the statement of facts. 


 This is substantively the same language as current Tex. R. App. P. 34.6(c)(1).



75" coordsize="21600,21600"
 o:spt="75" o:preferrelative="t" path="m@4@5l@4@11@9@11@9@5xe" filled="f"
 stroked="f">
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No.
06-11-00030-CR

                                                ______________________________

 

 

 

                                                   IN
RE:  MICHAEL KENNEDY

 

 

                                                                                                  


 

                                                                                                                            


                                                     Original
Mandamus Proceeding

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

                                            Memorandum
Opinion by Justice Moseley

                                                                              

                                                                              








                                                     MEMORANDUM 
OPINION

 

            Michael Kennedy has filed a document
which we deem a petition for writ of mandamus in which he asks this Court to
order the Honorable Mark Calhoon to take action on documents filed in his
court.

            We deny the petition. 

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          January 25, 2011

Date
Decided:             January 26, 2011

 

Do
Not Publish