**Linda Diane SPRICK, Appellant,**

v.

**Michael A. SPRICK, Appellee.**

No. 08–98–00035–CV.

Court of Appeals of Texas,
El Paso.

June 24, 1999.

Melissa Hirsch, Odessa, for Appellant.

Jerry D. Caddel, Odessa, for Appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

DAVID WELLINGTON CHEW, Justice.

This is an appeal from the division of the community property estate by the trial court in a divorce proceeding. We affirm.

Michael A. Sprick ("Michael") sued Linda Diane Sprick ("Linda") for divorce in September 1996 alleging that Linda had committed adultery and emotional abuse. In December 1997, the trial court entered a final decree of divorce. The trial court awarded Michael the following property and indebtedness:

Value
$121,478.95
$108,500.00

| | | | |
|---|---|---|---|
| 3. | A stock portfolio | | $ 33,204.00 |
| | | Total: | $263,182.95 |

| Liabilities | | | Value |
|---|---|---|---|
| 1. | Equitable lien to Linda | | $ 60,000.00 |
| 2. | Various credit card debts | | $ 26,241.98 |
| 3. | Debt to Maurita Johnson | | $118,900.00 |
| 4. | Debt to A.W. Newman | | $ 6,000.00 |
| 5. | Debt to Ed Handley | | $ 30,000.00 |
| | | Total: | $241,141.98 |

| | | |
|---|---|---|
| Michael's Net Award: | | $ 22,040.97 [2] |

Linda was awarded:

| Assets | | | Value |
|---|---|---|---|
| 1. | A judgment/lien against Michael | | $ 60,000.00 |
| 2. | Linda's retirement benefits | | $ 33,000.00 |
| | | Total: | $ 93,000.00 |

| Liabilities | | | Value |
|---|---|---|---|
| 1. | Various credit card debts | | $ 20,850.56 |
| | | Total: | $ 20,850.56 |

| | | |
|---|---|---|
| Linda's Net Award: | | $ 72,149.44 [2] |

Linda filed a motion for new trial on the grounds that the debt owed to Maurita Johnson, an eighty-one-year-old friend of Michael's family and client of Southwest Financial Services, was fraudulent and that the resulting division of the community property was unjust. During the hearing on the motion for new trial, Linda introduced transcripts of telephone conversations she had with Maurita Johnson in which Ms. Johnson denied loaning Michael any sum of money. Ms. Johnson testified at the hearing by deposition. In her deposition, Ms. Johnson stated that she was unaware of the loan at the time that Linda called. However, she stated that she had previously made the money available to Michael to use for either business or personal purposes even though she was unaware that he had actually used any of the money. After Linda's telephone conversation with Ms. Johnson, Michael, who had a general power of attorney over Ms. John-son's estate, informed Ms. Johnson that he had used the sums to cover some of his business and personal expenses. Ms. Johnson further stated that she would seek repayment of the debt when Michael was able to return to work at Southwest Financial Services. The trial court believed the deposition testimony of Ms. Johnson, stating that eighty-one-year-old people tend to tell the truth, and denied Linda's motion for new trial. Linda did not request, and the trial court did not file, findings of fact and conclusions of law. Linda appeals.

In three points of error, Linda challenges the division of the community property estate by the trial court. All three points of error concern the trial court's implied finding that the debt owed to Ms. Johnson was a community debt. In her first point of error, Linda argues that the trial court's failure to find a fraud upon the

2. The asset, liability, and net award figures for both Michael and Linda do not include the two vehicles and the corresponding indebtedness. Michael was awarded the 1996 Nissan Pathfinder subject to the debt owed to GMAC Financial Services. Linda was awarded the 1996 Honda Accord subject to the debt owed to American Honda Finance Corporation.

community estate was against the great weight and preponderance of the evidence. In her second point of error, Linda argues that the trial court erred by finding that the loan from Ms. Johnson was a community debt. In her final point of error, Linda asserts that the trial court abused its discretion in the division of the community estate.

In a non-jury trial, where no findings of fact or conclusions of law are filed or requested, it is implied that the trial court made all the necessary findings of fact to support its judgment. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex. 1989). These necessary findings will be implied provided that: "(1) the proposition is one raised by the pleadings and supported by the evidence; and (2) the trial judge's decision can be sustained on any reasonable theory that is consistent with the evidence and the applicable law, considering only the evidence favorable to the decision." *Brodhead v. Dodgin,* 824 S.W.2d 616, 620 (Tex.App.—Austin 1991, writ denied), *quoting Franklin v. Donoho,* 774 S.W.2d 308, 311 (Tex.App.—Austin 1989, no writ). The appellant will prevail in such a situation only when either the undisputed evidence negates one or more of the elements essential to the decision; or the appellee's pleadings omit one or more of the essential elements, and the trial was confined to the pleadings. *Id.* When, as in this case, a statement of facts is brought forward, these implied findings may be challenged by factual sufficiency and legal sufficiency points the same as jury findings or a trial court's finding of fact. *Roberson,* 768 S.W.2d at 281. When the implied findings are supported by the evidence, we must uphold the judgment of the trial court on any theory of law applicable to the case. *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex. 1987). In this final determination, we will consider only the evidence most favorable to the implied findings and will disregard all opposing or contradictory evidence. *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609, 613 (1950); *see generally,* W. Wendell Hall, *Standards of Review in Texas,* 29 St.Mary's L.J. 351, 497–8 (1998).

In her first point of error, Linda has challenged the factual sufficiency of the evidence supporting the implied finding that the indebtedness owed to Ms. Johnson did not constitute a fraud on the community. Because Linda is challenging an adverse finding concerning an issue upon which she had the burden of proof, she must show that the implied finding is against the great weight and preponderance of the evidence. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). We evaluate such a challenge by first determining whether the record contains some evidence to support the finding. If evidence exists which supports the finding, then we must examine the entire record to determine whether the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Capellen v. Capellen,* 888 S.W.2d 539, 542 (Tex.App.— El Paso 1994, writ denied). We may reverse and remand this case for a new trial only if we conclude that the trial court's failure to find that a fraud had been committed against the community is against the great weight and preponderance of the evidence. *See Ames v. Ames,* 776 S.W.2d 154, 158 (Tex.1989), *citing Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 651 (Tex.1988). Mindful of the fact that the trial court was not convinced by a preponderance of the evidence, we will not reverse simply because we conclude that the evidence preponderates toward an affirmative answer. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988). In this case, we will only reverse and remand if the great weight of the evidence supports an affirmative finding of fraud. *See id.*

In the case at bar, Linda contends that the loan from Ms. Johnson was fraudulent, if not nonexistent, and that Michael had falsely reported the indebtedness in order to offset the value of his business

and to manipulate the division of the community assets. In support of this allegation, she points to the transcript of her telephone conversations with Ms. Johnson in which Ms. Johnson adamantly denied making a loan to Michael. Also, in her deposition testimony, Ms. Johnson testified that even though she had offered to loan Michael some funds, she was unaware that he had used any of the funds until after the call from Linda. According to Ms. Johnson, Michael used the money to defray some of his business and personal expenses. Further, Michael had not paid any of the money back and Ms. Johnson testified that she would not seek repayment until after the divorce was settled and Michael was able to go back to work. Ms. Johnson is an elderly woman, almost blind, and she testified that Michael was not only a family friend but that she had to rely on him to handle her finances because of her disabilities.

Accountants testified at the final hearing for both Linda and Michael. Michael's accountant testified that he could not rule out the possibility that the unsecured loan from Ms. Johnson was taken by Michael for the purpose of devaluing the business as a community asset. He also testified that it was very unusual for large sums of money to be loaned to an individual without security. Linda's accountant testified that she did not think the loans were valid. After reviewing Michael's financial records, she was unable to account for the money that had been loaned to Michael. She also testified that in her opinion, some of the loan documents had been back-dated to make them appear to have been executed before the divorce proceedings commenced. Accordingly, we find that there is some evidence of probative value which would support a finding that the loan from Ms. Johnson was fraudulent.

Examining the record as a whole, there is also evidence supporting a finding that the loan was valid and necessary, but not fraudulent. Michael testified that during the period when he realized that his marriage was failing, he was unable to concentrate on his business and he began to borrow money to cover personal and business expenses. According to Michael, the funds were necessary to sustain his business and his family's lifestyle. He testified that the source of the funds were personal loans, including the loan from Ms. Johnson. He deposited the funds in the business's account and applied them to outstanding debts.

Ms. Johnson testified in her deposition that she had loaned the money to Michael and that she was unaware of the loan at the time that she had a telephone conversation with Linda. She stated that she expected to be repaid and that she had a promissory note evidencing Michael's indebtedness. Further, it was Ms. Johnson's understanding that the proceeds of the loan were to be used by Michael to cover personal and business expenses and that he would begin repaying her as soon as the divorce was settled and he could put more energy into his business.

Michael's accountant testified that in his opinion, the loan was valid and that he was able to trace the funds. According to the accountant, the loan was a personal loan and was not a business loan. He testified that during 1996, prior to the commencement of the divorce proceedings, Michael was unable to operate his business on an acceptable level because of his state of mind. Because the business was a sole proprietorship, the income generated was directly related to Michael's state of mind and his ability to perform. The accountant testified that Michael began taking personal loans to cover expenses as early as seven months prior to the filing of his divorce petition. Finally, Michael's accountant testified that in the year since Michael filed for divorce, his business performance had improved.

Finally, Linda's accountant testified that the business records from Southwest Financial Services indicated a correlation between the dollar amounts of the loan from Ms. Johnson and the deposits in the busi-

ness's account. While Linda's accountant stated that she could not find where the proceeds of the loan had been used for the benefit of the community, she later admitted when she reviewed the business's financial information, she was not trying to determine whether the funds were used to benefit the community.

 Reviewing the evidence as a whole, we are unable to say that the trial court's failure to find that the loan was fraudulent is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. The evidence is conflicting and the determination of whether the loan was fraudulent rests heavily upon the credibility of the witnesses, especially Michael and Ms. Johnson. The trial court believed Ms. Johnson when she said that she had loaned Michael the money and that she expected to be repaid. It is not within the province of this Court to interfere with the fact finder's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *Capellen*, 888 S.W.2d at 542, *citing Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 797 (1951). In other words, we are unable to say that the great weight of the evidence supports an affirmative finding of fraud. Linda's first point of error on appeal is overruled.

 In her second point of error on appeal, Linda argues that even if the loan from Ms. Johnson was valid the trial court erred when it found that the loan was a community debt. All property on hand at the dissolution of marriage is presumed to be community property. TEX.FAM.CODE ANN. § 3.003(a)(Vernon 1998); *Kimsey v. Kimsey*, 965 S.W.2d 690, 702 (Tex.App.— El Paso 1998, pet. denied). It is well established that debts contracted during the marriage are presumed to be on the credit of the community and thus are community obligations, unless it is shown that the creditor agreed to look solely to the separate estate of the contracting spouse for satisfaction. *Id., citing Cockerham v.*

*Cockerham*, 527 S.W.2d 162, 171 (Tex. 1975); *Morris v. Morris*, 894 S.W.2d 859, 863 (Tex.App.—Fort Worth 1995, no writ); and *Jones v. Jones*, 890 S.W.2d 471, 475 (Tex.App.—Corpus Christi 1994, writ denied). It follows that if debts contracted during the marriage are presumed to be on the credit of the community and thus are community obligations under Section 3.003(a), then the degree of proof needed to rebut the presumption is clear and convincing evidence as provided in Section 3.003(b). TEX.FAM.CODE ANN. § 3.003(b).

 When the burden of proof at trial is by clear and convincing evidence, we will apply the higher standard of factual sufficiency review first articulated in *Neiswander v. Bailey*, 645 S.W.2d 835, 835–36 (Tex.App.—Dallas 1982, no writ). *In Interest of G.B. R.*, 953 S.W.2d 391, 396 (Tex.App.—El Paso 1997, no writ). After considering all of the evidence, we must determine not whether the trier of fact could reasonably conclude that the existence of a fact is more probable than not, as in cases where the burden of proof is by a preponderance of the evidence, but whether the trier of fact could reasonably conclude that the existence of the fact is highly probable. *Id.* Under this standard, we must consider whether the evidence was sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* at 396, *citing Mezick v. State*, 920 S.W.2d 427, 430 (Tex.App.— Houston [1st Dist.] 1996, no writ); *In the Interest of P.S. and L. S.*, 766 S.W.2d 833, 835 (Tex.App.—Houston [1st Dist.] 1989, no writ). This case presents a unique situation in that an appellant is challenging a non-finding where the appellant bore the burden of proof by clear and convincing evidence. In a case such as this, we will only sustain the challenge if the trial court's failure to find that the loan was a separate obligation of Michael is against the clear and convincing evidence. In other words, Linda's challenge will fail if the evidence is insufficient to produce in the

mind of the trier of fact a firm belief or conviction as to the debt's separate property character.

In the case at bar, the evidence establishes that the loan was created during the existence of the marriage, albeit in close proximity to the commencement of the divorce action. Thus, the debt is presumed to be on community credit and a community obligation. To rebut this presumption, Linda had the burden of showing by clear and convincing evidence that the creditor, Ms. Johnson, agreed to look solely to the separate estate of the contracting spouse, Michael, for satisfaction. Linda failed to meet this burden of proof. Linda's second point of error on appeal is overruled.

In her final point of error on appeal, Linda argues that the trial court abused its discretion in the division of the community estate. She argues that the trial court's award of Southwest Financial Services to Michael without adequate compensation to her rendered the division of the community estate so manifestly unjust and unfair as to constitute an abuse of discretion. We disagree.

 The trial court has wide discretion in dividing the marital estate of the parties. Tex.Fam.Code Ann. § 7.001; *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985); *Kimsey*, 965 S.W.2d at 704; *Capellen*, 888 S.W.2d at 543. It is presumed that the trial court exercised its discretion properly, and the division will not be disturbed on appeal unless a clear abuse of discretion is shown. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex.1981); *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex.1974); *Kimsey*, 965 S.W.2d at 704. The trial court's ultimate division need not be equal as long as it is equitable and the circumstances justify a disproportionate division. *Kimsey*, 965 S.W.2d at 704; *Thomas v. Thomas*, 525 S.W.2d 200, 202 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ). In exercising its discretion, the trial court may consider many factors, including a disparity of incomes or of earning capacities, the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property. *Murff*, 615 S.W.2d at 699; *Kimsey*, 965 S.W.2d at 704.

 In light of our rulings on Linda's first two points of error, it is apparent that the trial court's division of the community estate favored her. Linda received approximately 76.6 percent of the net assets of the community property estate while Michael received only 23.4 percent of the net assets. Further, the trial court clearly considered Linda's infidelity to be the reason for the dissolution of the marriage and the trial court indicated that Linda's fault would consider highly in his division of the community estate. Because the circumstances of the divorce would have justified a disproportionate division of the community estate in favor of Michael, we fail to see how a division favorable to Linda could constitute an abuse of discretion. *See Conroy v. Conroy*, 706 S.W.2d 745, 748 (Tex.App.—El Paso 1986, no writ)(disproportionate division of community estate in favor of wife was not abuse of discretion where wife was forty-seven years old and had not worked outside of the home at any time during the twenty-four-year marriage, husband had income in excess of $3,000 per month, wife had no income and poor prospects for any immediate alleviation of debt, wife assumed responsibility of child and mortgage on family home, and husband was at fault in dissolution of the marriage). We hold that the trial court did not abuse its discretion. Linda's third point of error is overruled.

Having overruled each of Linda's points of error on appeal, we affirm the judgment of the trial court.

McCLURE, Justice, concurring.

Creative and inventive theories of recovery abound for economic torts committed

against the community estate. These range from waste, depletion of assets, the community opportunity doctrine and its inverse partner, the community jeopardy doctrine [3] to the generic tort of fraud, which encompasses a number of varieties such as breach of fiduciary duty, fraudulent conveyance, excessive gifts to children, and community funds expended on paramours, just to name a few. The intermediate courts have not been consistent in their determination of whether an independent economic tort is actionable between spouses for damages to the community estate. It now appears that the Supreme Court has not been entirely consistent either.

### Fraud as an Economic Tort

Fraud in the divorce context, as in other civil litigation, may be actual or constructive. Actual fraud is predicated upon the intent to deceive. The elements are: (1) that a material representation was made; (2) that it was false; (3) that when the speaker made it, he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he suffered thereby. *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 185 (Tex.1977). "[C]onstructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964). In other words, intent is irrelevant.

Because of the confidential relationship between a husband and wife, the marital partnership is fiduciary in nature. *Matthews v. Matthews*, 725 S.W.2d 275, 279 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). A breach of this fiduciary duty is frequently termed a "fraud on the community." *In re Marriage of Moore*, 890 S.W.2d 821, 827 (Tex.App.—Amarillo 1994, no writ). Generally speaking, the allegation is one of constructive rather than actual fraud:

> Any such conduct in the marital relationship is termed fraud on the community because, although not actually fraudulent, it has all the consequences and legal effects of actual fraud in that such conduct tends to deceive the other spouse or violate confidences that exist as a result of the marriage.

*Id.* at 827.

Constructive fraud includes actions of one spouse in unfairly disposing of or encumbering the other spouse's interest in community property or unfairly incurring community indebtedness without the other spouse's knowledge or consent. *Massey v. Massey*, 807 S.W.2d 391, 402 (Tex.App.—Houston [1st Dist.] 1991), *writ denied*, 867 S.W.2d 766 (Tex.1993). In the absence of fraud, a spouse has the right to control and dispose of community property subject to his sole management.[4] *Id.* at 401, *citing*

---

3. The community opportunity doctrine derives from the corporate opportunity doctrine and stands for the proposition that a spouse has an obligation to maximize the community estate by taking advantage of an opportunity to invest in a lucrative venture using community, rather than separate, funds. The community jeopardy doctrine operates in the reverse and suggests that a spouse also has an obligation to protect the community estate from risky pursuits by investing separate, rather than community, funds. As might be expected, whether an investment is potentially lucrative or risky is easier to discern in hindsight and is ordinarily fact specific.

4. During marriage, each spouse has the sole management, control, and disposition of the community property that the spouse would have owned if single, including personal earnings, revenue from separate property, recoveries for personal injury, and the increase and mutations of, and the revenue from, all property subject to the spouse's sole management, control, and disposition. TEX.FAM.CODE ANN. § 3.102(a). Community property subject to a spouse's sole management and control is sometimes referred to as "special community property," particularly in older case law. All other community property is subject to the joint management, control and disposition of

*Mazique v. Mazique,* 742 S.W.2d 805, 807 (Tex.App.—Houston [1st Dist.] 1987, no writ). Although the managing spouse need not obtain approval or consent for dispositions made of special community property, the fiduciary relationship between husband and wife requires that a spouse's disposition of special community property be "fair" to the other spouse. *Massey,* 807 S.W.2d at 402, *citing Horlock v. Horlock,* 533 S.W.2d 52, 55 (Tex.Civ. App.—Houston [14th Dist.] 1975, writ dism'd). The managing spouse carries the burden of establishing that the disposition of property was fair. *Id.*

The Supreme Court has recently reiterated that Texas recognizes the concept of fraud on the community, which it has defined as a wrong committed by one spouse which may be considered by the trial court in its division of the community estate and which may justify a disproportionate division. *Schlueter v. Schlueter,* 975 S.W.2d 584, 588 (Tex.1998). It is not, however, an independent tort giving rise to a cause of action between spouses. *Id.* at 586. Nor may it give rise to a recovery for punitive damages, inasmuch as "recovery of punitive damages requires a finding of an independent tort with accompanying actual damages." *Schlueter,* 975 S.W.2d at 589, *quoting Twin City Fire Ins. Co. v. Davis,* 904 S.W.2d 663, 665 (Tex.1995). Instead, the claim of fraud on the community is a means to an end, seeking either to recover specific assets wrongfully conveyed or to obtain a greater share of the community estate upon divorce as compensation for the loss of community property. *Schlueter,* 975 S.W.2d at 588, *quoting Belz v. Belz,* 667 S.W.2d 240, 247 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Where the economic tort depletes the community estate so as to leave insufficient property available to the wronged spouse, the courts may impose a money judgment in order to achieve an equitable division. *Schlueter,*

975 S.W.2d at 588, *citing Murff v. Murff,* 615 S.W.2d 696, 699 (Tex.1981). The money judgment serves to recoup the value of the wronged spouse's share of the estate which has been lost through the fraud. *Schlueter,* 975 S.W.2d at 588, *citing Mazique v. Mazique,* 742 S.W.2d 805, 808 (Tex.App.—Houston [1st Dist.] 1987, no writ). "Because the amount of the judgment is directly referable to a specific value of lost community property, it will never exceed the total value of the community estate." *Schlueter,* 975 S.W.2d at 588.

On the heels of *Schlueter,* the Court was presented with some rather egregious facts in *Vickery v. Vickery,* 999 S.W.2d 342 (Tex.1999)(J. Hecht, dissenting). The underlying court of appeals' opinion was unpublished. The Supreme Court denied the petition for review, with Justice Hecht dissenting from the denial in a published opinion which incorporates as an appendix both the intermediate court's opinion on the merits and Justice Andell's dissent from that court's denial of rehearing en banc. At issue was Mrs. Vickery's recovery in a bill of review proceeding. The jury found Mr. Vickery, himself an attorney, liable for fraud and breach of fiduciary duty and assessed Mrs. Vickery's damages at $6.7 million for loss of marital property and $1.3 million for mental anguish, together with $1 million in punitive damages. The jury also found that Mrs. Vickery's attorney breached her fiduciary duty, resulting in damages of $100,000 in lost marital property and $350,000 in mental anguish damages.

As Justice Hecht notes in his dissent, "[a]pplying *Schlueter* would require that the actual and punitive damages awarded Mrs. Vickery against her former husband be reversed and the case remanded to the district court to reconsider what division of the community is just and right. The district court may consider Mr. Vickery's 'dishonesty of purpose or intent to deceive'

the spouses unless the spouses provide otherwise by power of attorney in writing or other

agreement. Tex.Fam.Code Ann. § 3.102(c).

and 'the heightened culpability of actual fraud' as found by the jury." The fact that the Supreme Court, by denying review, allowed the actual and punitive damages to stand gives me some concern as to what the current state of the law is for economic torts committed against the community estate.

### The Loan from Maurita Johnson

Linda Sprick's first point of error complains that the loan from Maurita Johnson was fictitious and designed to perpetrate a fraud on the community. She alleges that Michael deliberately concocted the debt to diminish the value of Michael's business, a sole proprietorship, and in turn to diminish the overall value of the community estate in which she was entitled to share.[5] In this instance, Linda is not complaining about fraudulent conveyance, she is complaining of fraudulent encumbrance. The trial court clearly stated on the record that it believed Ms. Johnson's sworn testimony concerning the validity of the indebtedness. In a swearing match like this one, the demeanor and credibility of the witnesses is crucial to the fact-finding process. Where the evidence is conflicting and of sufficient magnitude such that the decision of the fact finder could have gone either way, I am hard-pressed to conclude that the trial court erred in failing to find a fraud on the community.[6]

In her second point of error, Linda complains, in effect, that the indebtedness was not a community liability. Instead, she argues that the court should have construed it "to be a gift or simply to the benefit of the Appellee and not the community...." I interpret her argument to be that the·indebtedness is an obligation of Michael's separate estate.

Tex.Fam.Code Ann. § 3.003(a) establishes the community property presumption, that is to say that all property on hand at the dissolution·of marriage is presumed to be community property. The burden of proof falls on the spouse attempting to rebut the presumption and the degree of proof necessary is clear and convincing evidence. Tex.Fam.Code Ann. § 3.003(b). The presumption applies to liabilities as well as assets. Debt acquired by either spouse during marriage is presumed to be procured on the basis of community credit. *Wierzchula v. Wierzchula,* 623 S.W.2d 730, 732 (Tex.Civ. App.—Houston [1st Dist.] 1981, no writ). Thus, an asset purchased on borrowed funds is presumptively community. Borrowed funds expended for living expenses rather than for purchasing assets should be treated no differently, despite the fact that the community presumption is for the most part intended to maximize, rather than minimize, the community estate. As a result, Linda had to prove by clear and convincing evidence that either the monies were a gift, not a loan, or that Ms. Johnson as a creditor, agreed to look solely to Michael's separate estate for repayment. *Wierzchula,* 623 S.W.2d at 732.

As the majority notes, this case presents the unique situation of an appellant complaining of a non-finding on an issue upon which she bore the burden of proof by clear and convincing evidence. While the

---

5. In her pleadings, Linda sought a disproportionate division of the community estate, alleging, among multiple other claims, the wasting of community assets. She also requested that the court set aside non-marital liabilities to the party incurring them. There was no express pleading of either actual or constructive fraud, but the record duly reflects that because Michael did not file a sworn inventory, Linda was unaware that a debt to Ms. Johnson even existed until the time of trial. Without question, the issue was tried by consent.

6. While Linda does not specifically address the issue of which party had the burden on the constructive fraud contention, the structure of her point of error suggests, and the majority so notes without benefit of analysis, that she carried the burden of proof. I am not convinced that is the case. However, regardless of who bore the burden, the evidence is sufficient to support the trial court's implied finding of a valid loan.

heightened standard which we have announced has thus far only been applied to the review of a finding rather than a nonfinding, I do not believe the reverse analysis to be overly complicated. It is best stated as whether the trier of fact could reasonably conclude that it is not highly probable that the debt is Michael's separate property. In other words, if the evidence is insufficient to produce in the mind of the trier of fact a firm belief or conviction as to the debt's separate property character, Linda cannot prevail. Based on the record, I cannot conclude that she has met her burden.

With these comments, I concur.