COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





RUEL NEWBERRY,
 
                            Appellant,

v.


BRISA NEWBERRY,

                            Appellee.

§
 
§
 
§
 
§
 
§
 
 § 


No. 08-10-00062-CV

Appeal from the

171st Judicial District Court

of El Paso County, Texas 

(TC#2008CM1548) 





O P I N I O N

            Appellant appeals a final divorce judgment, arguing that the evidence at trial was legally
insufficient to support a finding of cruelty, legally and factually insufficient to support a finding
of adultery, and that the division of the community estate was disproportionate to him.
            Mr. Ruel Newberry and Ms. Brisa Newberry were married on September 1, 2002. Before
marriage, they entered into a prenuptial agreement. After living in Tucson, Arizona for some
years, where Appellee earned a Master’s in Business Administration, and Appellant worked as an
engineer, they moved to El Paso, Texas after Appellee’s father, Victor Villalobos (“Mr.
Villalobos”) offered each of them jobs. They owned a home in Arizona and bought a second
house in El Paso on Oscar Perez Avenue.
            Appellee filed for divorce on March 5, 2008. Appellant filed a general denial, and then a
counterpetition. In his counterpetition, he sought a disproportionate division of the community
estate based on fault grounds, among others.
            The trial court held a hearing on this matter on various dates from March 2009 through
September 2009, and at the end of trial, the court declared the parties divorced. The trial court
rendered judgment on October 6, 2009, entering a judgment in final divorce/annulment and a
final divorce decree on January 28, 2010. In its final decree, the court granted Appellee divorce
from Appellant “on the grounds of insupportability, adultery and cruelty.” Upon Appellant’s
request, the court filed findings of fact and conclusions of law on March 8, 2010 to support its
judgment. In its findings of fact, the trial court determined in part:
5.The legitimate ends of the marriage between Petitioner and Respondent
had been destroyed because Respondent, Ruel Newberry, committed
adultery during the marriage and because Ruel Newberry was guilty of
cruel treatment towards Brisa Newberry, which renders the parties further
living together insupportable and such behavior by Respondent prevents
any reasonable expectation of reconciliation. In addition thereto, the
marriage of Petitioner and Respondent had become insupportable because
of discord and conflict of personalities that destroyed the legitimate ends
of the marriage relationship and prevents any reasonable expectation of
reconciliation.

On February 19, 2010, Appellant filed his notice to appeal the court’s judgment.
            In his first two issues, Appellant challenges the legal and factual sufficiency of the
evidence to support the adultery finding and the legal sufficiency of the evidence to support the
cruelty finding, which were the bases for the disproportionate award of the martial estate going to
Appellee.
            When reviewing the record to determine whether there is legally sufficient evidence to
support the judgment, we examine only the evidence and inferences that support the verdict. 
Minnesota Min. and Mfg. Co. v. Nishika Ltd., 953 S.W.2d 733, 738 (Tex. 1997); Henry v.
Henry, 48 S.W.3d 468, 474 (Tex.App.--Houston [14th Dist.] 2001, no pet.). If more than a
scintilla of evidence exists to support the lower court’s finding, the legal sufficiency challenge
fails. Minnesota Min. and Mfg. Co., 953 S.W.2d at 738; Henry, 8 S.W.3d at 473. “More than a
scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level
that would enable reasonable and fair-minded people to differ in their conclusions.” Henry, 48
S.W.3d at 473, citing Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). In
a factual sufficiency review, we examine all the evidence in the record, both for and against the
lower court’s findings, and reverse only if it is so against the great weight of the evidence as to be
clearly wrong and unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996).
            Appellant asserts the trial court erred in finding that he committed adultery based only on
Appellee’s testimony that he was in a room with his high school sweetheart with the door closed
and lights off for more than twenty minutes. He claims that “[g]iven the motive of Brisa to
fabricate an adultery claim (going through a divorce involving the disputed division of thousands
of dollars of property and liabilities) and circumstances under which this evidence was acquired
(just before Appellant and Appellee separated), very little weight should be given to this sparse
and nebulous testimony.” Appellant concludes that because the trial court erred in granting
Appellee a divorce on the fault ground of adultery, we should remand this case in order for the
trial court to reconsider its division of the community estate.
            Adultery can be shown by circumstantial evidence. See Morrison v. Morrison, 713
S.W.2d 377, 380 (Tex.App.--Dallas 1986, writ dism’d). At trial, Appellee testified Appellant
admitted to her that when he attended a party at a friend’s house, he went into a room with his
high school sweetheart, Liza, and stayed in there with her with the doors closed and lights off for
more than twenty minutes. She testified that this happened after she and Appellant had ceased
being sexually intimate. Appellant testified that he never did anything wrong outside of the
marriage, but admitted that he viewed pornography online because Appellee had refused to have
sex. We defer to the fact finder’s determination with regard to credibility and weight to be given
their testimony, and conclude that the evidence was legally and factually sufficient to support the
trial court’s finding of adultery as a basis for the divorce. See Tex.Fam.Code Ann. § 6.704(b)
(West 2006); see Morrison, 713 S.W.2d at 380 (concluding adultery can be shown by
circumstantial evidence).
            In Issue One, Appellant contends that Appellee was not entitled to a divorce on the fault
ground of cruelty because the evidence was legally insufficient to support this finding. The
sufficiency and weight of the evidence necessary to prove cruelty under the trial court’s standard
of proof must, of necessity, be left to the sound discretion of the trier of fact. In re Marriage of
Rice, 96 S.W.3d 642, 648 (Tex.App.--Texarkana 2003, no pet.). We shall not disturb the trial
court’s finding of cruelty absent abuse of discretion. Id. at 648. In a divorce proceeding, one
party’s testimony may alone be sufficient to support the judgment. Henry, 48 S.W.3d at 474
(finding husband’s testimony, by itself, would support trial court’s judgment and therefore no
abuse of discretion); Ingram v. Ingram, 376 S.W.2d 888, 888–89 (Tex.Civ.App.--Waco 1964, no
writ)(wife’s uncorroborated testimony satisfies test for sufficiency).
            Appellant argues that the court erred in concluding that he engaged in “cruelty” based on
the sole evidence in the form of Appellee’s testimony that “she caught Ruel on several occasions
viewing pornographic materials and masturbating” as he did so. He argues that this conduct at
most showed that he was suffering from a psychological condition or disorder, which required
professional treatment, and not that he “willfully inflicted suffering on his wife.” According to
Appellant, the evidence does not support a finding that he engaged in cruel treatment of Appellee
because there was nothing “willful” about his conduct. Appellant’s complaint, again, goes to
fault as a basis for the disproportionate property division.
            Although infrequent since the introduction of no-fault divorce, a Texas court may still
grant a divorce on the ground of cruel treatment. Henry, 48 S.W.3d at 473. A spouse’s conduct
rises to the level of cruel treatment when his or her conduct renders the couple’s living together
insupportable. Id., citing Tex.Fam.Code Ann. § 6.002; Finn v. Finn, 185 S.W.2d 579, 582
(Tex.Civ.App.--Dallas 1945, no writ). “Insupportable” means “incapable of being borne,
unendurable, insufferable, intolerable.” Henry, 48 S.W.3d at 473-74, citing Cantwell v.
Cantwell, 217 S.W.2d 450, 453 (Tex.Civ.App.--El Paso 1948, writ dism’d). Mere disagreements
or trifling matters will not justify granting a divorce for cruelty. Shankles v. Shankles, 445
S.W.2d 803, 807 (Tex.Civ.App.--Waco 1969, no writ). If, for instance, the complaining spouse
suffers only nervousness or embarrassment, a trial court may not grant the divorce on the ground
of cruelty. Golden v. Golden, 238 S.W.2d 619, 621 (Tex.Civ.App.--Waco 1951, no writ). Abuse
need not be limited to bodily injury; nonetheless, physical abuse will support granting a divorce
on cruelty grounds. Waheed v. Waheed, 423 S.W.2d 159, 160 (Tex.Civ.App.--Eastland 1967, no
writ); Cote v. Cote, 404 S.W.2d 139, 140 (Tex.Civ.App.--San Antonio 1966, writ dism’d);
Blackburn v. Blackburn, 163 S.W.2d 251, 255 (Tex.Civ.App.--Amarillo 1942, no writ). Acts
occurring after separation may be used to support a finding of cruelty. Redwine v. Redwine, 198
S.W.2d 472, 473 (Tex.Civ.App.--Amarillo 1946, no writ).
            Adultery may be considered to be cruelty sufficient to support the grant of a divorce on
that ground. Winkle v. Winkle, 951 S.W.2d 80, 90-1 (Tex.App.--Corpus Christi 1997, writ
denied)(concluding evidence of husband’s adultery could support trial court’s finding of cruel
treatment). The accumulation of several different acts of cruelty may constitute sufficient
grounds on which to grant a divorce. Hester v. Hester, 413 S.W.2d 448, 450 (Tex.Civ.App.--Tyler 1967, no writ); Emerson v. Emerson, 409 S.W.2d 897, 900 (Tex.Civ.App.--Corpus Christi
1966, no writ); Wauer v. Wauer, 299 S.W.2d 719, 721 (Tex.Civ.App.--Amarillo 1957, no writ).
            At trial, Appellee testified that she caught Appellant viewing pornographic materials on
television and on the Internet, and masturbating to them numerous times since 2003. Appellee
testified that when she confronted Appellant about his actions, he explained that they were
caused by her unwillingness to engage in sexual intercourse with him as frequently as he had
wanted. After attempting to engage in counseling with family therapists in Tucson and El Paso,
for a time Appellee believed that Appellant had stopped his habit of viewing pornography.


 
Despite their reconciliation efforts, however, Appellant continued to view pornography, and
admitted to Appellee that he had a problem with being addicted to viewing pornography. After
his admission, Appellant denied viewing any more pornography, but Appellee later discovered a
new laptop in his possession on which Appellant created a new e-mail address, and used an alias
to communicate with another female. In one of his e-mails to this individual, he indicated that he
and Appellee were no longer in a relationship anymore, and that he was “available.” We find
that this evidence, coupled with the evidence regarding Appellant’s involvement with Liza, were
legally sufficient to support the trial court’s finding of cruelty. See Winkle, 951 S.W.2d at 91
(concluding evidence of husband’s adultery could support trial court’s finding of cruel 
treatment). As such, the trial court did not err in its finding of cruelty as a basis of fault, and we
conclude the court did not err in awarding a disproportionate share of the marital estate to
Appellee on both cruelty and adultery as bases of fault. Accordingly, we overrule Issues One and
Two.
            In Issue Three, Appellant argues that even if Appellee properly proved that she was
entitled to the divorce on fault grounds, the trial court erred in its division of the community
estate because it was not a “just and right division.” We review most appealable issues in a
family law case, such as property division incident to divorce or partition, conservatorship,
visitation, and child support, under an abuse-of-discretion standard. Garcia v. Garcia, 170
S.W.3d 644, 648 (Tex.App.--El Paso 2005, no pet.). The test for an abuse of discretion is
whether the trial court acted without reference to any guiding rules and principles. Garcia, 170
S.W.3d at 649; Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985). 
In reviewing a trial court’s division of a marital estate, it is our duty to presume that the trial
court properly exercised its discretion. Chafino v. Chafino, 228 S.W.3d 467, 473 (Tex.App.--El
Paso 2007, no pet.); Burney v. Burney, 225 S.W.3d 208, 215 (Tex.App.--El Paso 2006, no pet.). 
Thus, the party challenging the division bears the burden of demonstrating from the evidence in
the record that the trial court’s division was so unjust and unfair as to be an abuse of discretion. 
Chafino, 228 S.W.3d at 473–74; Burney, 225 S.W.3d at 215.
            Appellant asserts the trial court abused its discretion in dividing the community estate
between him and Appellee disproportionately. He argues that the court ordered him to pay
$51,756.66, which represents approximately 95.1 percent of the community debt, whereas
Appellee only had to pay $2,569, or approximately 4.9 percent of the debt. As for award of
community property, Appellant contends that while the court awarded Appellee an amount over
$80,000, it awarded him only $11,000.
            The Texas Family Code requires that a trial court “shall order a division of the estate of
the parties in a manner that the court deems just and right, having due regard for the rights of
each party and any children of the marriage.” Tex.Fam.Code Ann. § 7.001. Although the
division must be equitable, a trial court need not divide community property equally. Chafino,
228 S.W.3d at 474; Chacon v. Chacon, 222 S.W.3d 909, 915 (Tex.App.--El Paso 2007, no pet.).
            We employ a two-pronged test in determining whether the trial court abused its discretion
and inquire: (1) did the trial court have sufficient information upon which to exercise discretion;
and (2) did the trial court abuse its discretion by making a property division that was manifestly
unjust or unfair? Chafino, 228 S.W.3d at 472; Burney, 225 S.W.3d at 215; Chacon, 222 S.W.3d
at 915. In making the division, the trial court was authorized to consider a variety of factors,
which our jurisprudence commonly refers to as the “Murff” factors. Murff v. Murff, 615 S.W.2d
696, 699 (Tex. 1981); Garcia, 170 S.W.3d at 653. Among the variety of “Murff” factors that the
trial court may consider in dividing the marital estate are: (1) the spouses’ capacities and
abilities; (2) benefits which the party not at fault would have derived from the continuation of the
marriage; (3) business opportunities; (4) relative physical conditions; (5) relative financial
conditions; (6) disparity of ages; (7) size of separate estates; (8) the nature of the property; and
(9) disparity of earning capacity. Murff, 615 S.W.2d at 699. “We defer to the trial court’s
determination of the credibility of the witnesses’ testimony and disturb the trial court’s findings
only in a case of clear abuse of discretion.” Burney, 225 S.W.3d at 215; see Murff, 615 S.W.2d
at 700 (absent an abuse of discretion, the trial court’s property division will not be disturbed on
appeal).
            The Texas Family Code establishes a presumption that property possessed by either
spouse during or at the dissolution of marriage is community property. Tex.Fam.Code Ann.
§ 3.003(a)(West 2006); Sprick v. Sprick, 25 S.W.3d 7, 17 (Tex.App.--El Paso 1999, pet. denied). 
The community property presumption applies not only to assets but to liabilities, as well. Sprick,
25 S.W.3d at 17. Therefore, there is a presumption that debt acquired by either spouse during
marriage was procured on the basis of community credit. Sprick, 25 S.W.3d at 17, citing
Wierzchula v. Wierzchula, 623 S.W.2d 730, 732 (Tex.Civ.App.--Houston [1st Dist.] 1981, no
writ). An asset purchased on borrowed funds is presumptively community in character, and
borrowed funds that are utilized for living expenses should be treated the same. Sprick, 25
S.W.3d at 17. The spouse attempting to rebut these presumptions bears the burden of proof and
the degree of proof required is clear and convincing evidence. Tex.Fam.Code Ann. § 3.003(b);
Sprick, 25 S.W.3d at 17.
            Property owned or claimed by a spouse before marriage or acquired after marriage by gift,
devise, or descent is that spouse’s separate property. Tex.Const. art. XVI, § 15; Tex.Fam.Code
Ann. § 3.001(1)(2). As to separate property, the trial court is without authority to divest a spouse
of it. Burney, 225 S.W.3d at 215; see Cameron v. Cameron, 641 S.W.2d 210, 215-16 (Tex.
1982); Langston v. Langston, 82 S.W.3d 686, 688 (Tex.App.--Eastland 2002, no pet.)(trial court
may not divest a spouse of separate property and award it to the other spouse).
            In this case, the trial court entered the following pertinent findings of fact and conclusions
of law regarding the distribution of the marital estates:
Findings of Fact
. . .
 
6.Brisa Newberry had separate property at the time the divorce petition was
filed and at the time of the final hearing as follows:
 
a.a 2000 Mitsubishi Eclipse motor vehicle . . .;
 
b.a limited partnership interest in Villalobos L.P.;
 
c.a limited partnership interest in a partnership known as Blue Range
Physician Management Services, L.P.;
 
d.her engagement ring, a gas grill, study furniture, an arm chair, a treadmill,
a freezer, and a toy poodle named “Lenny.”
 
7.Ruel Newberry had separate property at the time of the filing of the
divorce and at the time of the final hearing as follows:
 
a.a 2001 Ford Explorer motor vehicle . . .
 
8.During the marriage, Petitioner and Respondent acquired the following
property all of which is community property with the fair market values as
shown below:
 
Real Estate:
 
4364 Cholla Desert Trail, Tucson Arizona
            Fair Market Value: $208,000.00 +
Outstanding Mortgage: $137,670.00 (as of March 5, 2009)
Outstanding Home Equity Loan: $74,116.00 (as of March 5, 2009)
At the time of the last final hearing of September 11, 2009, this house had
been foreclosed by the lender as a result of default on the mortgage and home
equity loan.
 
728 Oscar Perez, El Paso, Texas
Fair Market Value: $264,380.00
Outstanding Mortgage (Met Life): $209,429.00 (as of March 5, 2009)
Outstanding Home Equity Loan (1st Tennessee Bank): $40,627.00
At the time of the last final hearing of September 11, 2009, this house had
been posted for foreclosure
 
Motor Vehicles:
 
2003 Mitsubishi Galant
Fair Market Value: $6,175.00
 
Cash & Accounts with Financial Institutions:
 
            Wells Fargo Checking Account ending 8994                                                  $318.00
            Wells Fargo Savings Account ending 8780                                                    $10.00
            Wells Fargo PMA Checking Account ending 7279   Balance as of 8/31/08  $14,201.14
Wells Fargo Advantage Checking Account ending 2981 Balance as of 8/31/08 $0.00
Wells Fargo Comp Advantage Account ending 0473 Balance as of 8/31/08 $0.00
Wells Fargo Comp Advantage Account ending 0170 Balance as of 8/31/08 $2,439.20
Wells Fargo Money Market Account ending 5932Balance as of 8/31/08 $0.00
Wells Fargo Money Market Account ending 2999Balance as of 8/31/08 $0.00
Wells Fargo Money Market Account ending 7346Balance as of 8/31/08 $75.08
Wells Fargo Money Market Account ending 2601Balance as of 8/31/08 $0.00
Wells Fargo Savings Account ending 9867Balance as of 1/31/08 $2,437.34 
                                    (Mr. Newberry closed account and took balance)

            Retirement Benefits:
Raytheon Savings & Investment PlanBalance on 3/6/07 $32,362.17 
 (Mr. Newberry rolled into a Fidelity IRA)
                                                            Fidelity IRA balance on 12/31/07       $33,947.17 
                                                                                         (Mr. Newberry took balance)

            Household Furnishings & Fixtures:
 
Please refer to the Exhibit ‘A’ . . . for the list of property which was still located at
the Oscar Perez residence at the time of the separation of the parties and subject to
the control of Mr. Newberry.
 
Additionally, Mr. Newberry was in possession of the following:
            Television, Projector, Mrs. Newberry’s IBM Laptop, Digital Camera ($4,000.00)
            Tandem Bike ($300.00)
            3 cats
 
Mrs. Newberry was in possession of the following:
            Desktop computer, external drive, 3 in 1 printer, Television ($2,000+)
 
9.During the marriage, Petitioner and Respondent incurred the following
debts and liabilities, with the balances on each being as of the date shown
below:
 
Liabilities:
 
Wells Fargo Education . . .Balance on 8/21/08$7,794.29
Panhandle-Plains Student Loan . . . Balance on 5/29/08 $17,155.20
Bank of America (Line of Credit) . . . Balance on 3/5/09 $21,069.00 
(This debt was incurred by Respondent, Ruel Newberry, unbeknownst to
Petitioner, Brisa Newberry)
 
Citifinancial . . . [Ashley Furniture]Balance on 3/5/09 $3,641.00
AT&T Universal Card . . . [Mitsubishi Galant] Balance on 8/31/08 $3,199.11
Kohl’s Credit Card . . . Balance on 3/5/09 $390.00
Sam’s Club Credit Card. . .Balance on 3/5/09 $352.00
HSBC Mastercard . . . Balance on 3/5/09 $0.00
The Roomstore Credit . . . Balance on 3/5/09 $637.00
Sears Credit Card . . . Balance on 3/5/09 $2,247.00
New York & Company . . .Balance on 3/5/09 $794.00
Express Credit Card . . . Balance on 3/5/09 $396.00
Old Navy Credit Card . . . Balance on 3/5/09 $0.00
Macy’s . . .Balance on 3/5/09 $0.00
 
10.Petitioner, Brisa Newberry, had incurred $30,970.27 dollars in attorney’s
fees for her representation by Larry H. Schwartz, which fees are
reasonable and necessary for the representation of Brisa Newberry. 
Marlene Gonzalez represented Ruel Newberry and both attorneys, by
stipulation, presented their attorney’s fees to the Court by agreement.
 
11.Petitioner and Respondent both earn approximately the same amount of
money.

. . .

Conclusions of Law

. . .
 
4.All property belongs to the community estate, except for the following,
which belongs to the respective parties’ separate estate:
 
Separate Property of Brisa Newberry:
 
a.a 2000 Mitsubishi Eclipse . . .;
 
b.a limited partnership interest in Villalobos L.P.;
 
c.a limited partnership interest in a partnership known as Blue Range
Physician Management Services, L.P.;
 
d.her engagement ring, a gas grill, study furniture, an arm chair, a treadmill,
a freezer, and a toy poodle named “Lenny.”
 
Separate Property of Ruel Newberry:
 
a.a 2001 Ford Explorer . . .
 
5.A division of the property of Petitioner and Respondent effected by the
final judgment is a just and right division, having due regard for the rights
of each party irrespective of the characterization of any item of property as
either community or separate.
 
6.The following is a just and right division of the community assets of the
parties:
 
To Brisa Newberry:
 
4364 E. Cholla Desert Trail, Tucson, Arizona 85706
At the time of the last final hearing of September 11, 2009, this house had
been foreclosed by the lender as a result of default on the mortgage and home
equity loan.
728 Oscar Perez, El Paso, Texas 79932
At the time of the last final hearing of September 11, 2009, this house had
been posted for foreclosure.
 
Household goods in her possession
 
[A series of household items follow]
 
fifty percent (50%) of the funds on deposit at:
 
a.Wells Fargo Bank PMA checking account number ending 7279, Said
account bearing a balance of $14,201.14 as of August 31, 2008
 
b.Wells Fargo Bank Comp Advantage checking account ending 0473, Said
account bearing a balance of $0.00 as of August 31, 2008
 
All funds on deposit at:
 
a.Wells Fargo Comp Advantage checking account number ending 8994
 
b.Wells Fargo Bank Money Market Savings account number ending 8780
 
c.Wells Fargo Bank Money Market Savings account number ending 7346
 
fifty percent (50%) of RUEL NEWBERRY’s retirement benefits in Raytheon
Savings and Investment Plan (said account bearing a balance of $32,362.17 as of
March 6, 2007), wife’s portion being $16,181.08
 
Villalobos L.P.
 
Blue Range Physician Management Services, L.P.
 
The following pets: [3 cats and toy poodle]
 
To Ruel Newberry:
 
Household goods in her [sic] possession
 
[A series of household items follow]
 
fifty percent (50%) of the funds on deposit at:
 
a.Wells Fargo Bank PMA Checking account number ending 7279, Said
account bearing a balance of $14,201.14 as of August 31, 2008
 
b.Wells Fargo Bank Comp Advantage checking account number ending
0473, Said account bearing a balance of $0.00 as of August 31, 2008
 
All funds on deposit at:
 
a.Wells Fargo Savings Account number ending 9867
50% of RUEL NEWBERRY’s benefits received from the Raytheon Savings and
Investment Plan
 
2003 Mitsubishi Galant . . .
 
7.The following is a just and right division of the debts, liabilities and
obligations of the parties:
 
To Brisa Newberry:
 
[her student loan; Roomstore account; $1,000 of Citifinancial (Ashley Furniture
Debt) . . . Said account bearing a balance of $3,641 as of March 5, 2009; Kohl’s
account; Sam’s Club account; Sears account; New York & Company account;
Express account; Old Navy account; Macy’s account; the balance due on the
parties’ 2006 IRS Federal Income Tax Return]
 
To Ruel Newberry:
 
[Wells Fargo Education Financial Services (Student Loan); Panhandle Plains
Student Loan; Bank of America (line of credit); $2,641 of the Citifinancial
(Ashley Furniture Debt) account; AT&T Universal Card account]
 
8.Each party shall pay their own respective attorney’s fees, costs and
expenses of this suit . . . .

            Appellant contends that there was no just division of the community estate assets and
liabilities in the present case. He specifically contests that the property award was
disproportionate because at the time of his last inventory, only $8,000 remained in the Wells
Fargo PMA checking account ending in number 7279, half of which was awarded to Appellee;
all of the funds in Wells Fargo checking account ending in number 8994, which had a balance of
$794.53 as of February 13, 2009, was awarded to Appellee; all of the funds in Wells Fargo
savings account number 8780, which had a balance of $10 on August 31, 2008, was awarded to
Appellee; and finally, all of the funds in Wells Fargo money market savings account ending in
number 7346, which the Decree listed as having a balance of $75.08, was awarded to Appellee. 
He asserts that the foregoing awards amount to a total of $4,879.61 in bank funds, and when
added to $16,973.58, which constituted half of his Raytheon 401(k) fund, and the residence in
El Paso which had a net equity of $14,324, which were all awarded to Appellee as well, the total
property award to her summed up to $53,150.77. He claims that in contrast, the court only
awarded him half of the Wells Fargo PMA checking account ending in number 7279 ($4,000)
plus all of the funds in Wells Fargo savings account number 9867, which at the time of the final
divorce decree held no funds. However, he concedes he was awarded the 2003 Mitsubishi
Galant, which had a net equity value of $3,500, and so he received a total award of $7,500.
            We first note that in its findings of fact and conclusions of law, the trial court noted that
contrary to Appellant’s claims, the Wells Fargo savings account ending in number 9867 that was
awarded to him contained $2,437.34. The court specifically determined that Appellant closed his
account and took the entire balance in it during marriage. Moreover, the court also found that the
Wells Fargo checking account ending in number 8994, which was awarded to Appellee,
contained only $318, not the $794.53 amount asserted by Appellant.
            Appellant also argues that the trial court erred in its division of community liabilities. He
asserts that while the court ordered him to pay $51,756.66 in community debts, the court only
ordered Appellee to pay $2,569. Contrary to Appellant’s claim, our review of the record
indicates that the court ordered Appellee to pay approximately $14,595 in community debts.
Moreover, in its findings of fact and conclusions of law, the court determined that Appellant
initiated the Bank of America line of credit, and incurred this $21,069 debt without Appellee’s
knowledge.
            In this case, the trial court’s division of the community estate was supported by evidence
of substantive and probative character, and so we conclude the trial court did not abuse its
discretion upon this basis. See Garcia, 170 S.W.3d at 649. Both Appellant and Appellee
testified before the trial court. The trial court heard testimony that the Raytheon 401(k)
retirement account in Appellant’s name, which was valued at $32,362.17, no longer existed
because Appellant had withdrawn all of the funds out of this account during marriage. Appellee
testified that Appellant also withdrew $2,437.34 from the Wells Fargo savings account ending in
account number 9867. The court further heard testimony from Appellee that she did not recall
initiating a line of credit with Bank of America; that because she moved out of the Oscar Perez
residence she shared with Appellant, she had to spend more than $20,000 on furnishings and
supplies for her new apartment.


 Appellee also testified that her brother, Luis, and her father,
Mr. Villalobos, decided to fire Appellant from their company’s employ because of allegations
that Appellant stole computers from the company. Mr. Villalobos, Appellee’s father,
corroborated this testimony at trial. The trial court heard Appellee’s accusations regarding
Appellant’s encounters with other females and arguable addiction to pornography during their
marriage. Appellant admitted that he viewed pornographic materials from time to time online,
but denied he did anything wrong outside of the marriage. According to Appellant, Appellee
made frequent and unnecessary expenditures, and he testified that he was unfamiliar with several
credit card debts they owed at the time of trial, including those from Chase, Citibank, and the
Roomstore. He claimed that the line of credit from Bank of America was used to pay community
debts of both parties. With regards to his Raytheon 401(k) plan, he testified he had $4,232.12 in
this plan shortly after marrying Appellee, but on cross-examination, he revealed that he withdrew
the $32,362.17 from this account after he separated from Appellee and was fired from his job at
Mount West Family Health Center. Appellant also testified that he had received a letter from the
IRS indicating he owed $17,805 in tax liabilities, but Appellee admitted that this outstanding
debt belonged to her, and that she had entered into a settlement agreement and made
arrangements with the IRS to pay this off in installments.


 According to Appellant, he paid for
Appellee’s MBA degree from community funds, but Appellee testified that her father paid for
her education. Despite Appellant’s testimony that he faced financial difficulties since the
separation, opposing counsel elicited his testimony that he had been traveling across the country
since then, and that his credit report was possibly unaffected by the outstanding IRS obligation. 
Appellant also testified that he removed certain personal property from the Oscar Perez
residence. Finally, the trial court heard argument by Appellee’s counsel that although the Tucson
property was foreclosed on the first but not the second lien, and that the Oscar Perez property
was not foreclosed, Appellee’s father was willing to assist her in saving both properties. 
Deferring to the trial court’s determination on witness credibility, and based upon our review of
the record, we do not find the trial court abused its discretion that will allow us to disturb its
findings. Burney, 225 S.W.3d at 215; see Murff, 615 S.W.2d at 700 (absent an abuse of
discretion, the trial court’s property division will not be disturbed on appeal). Accordingly, we
overrule Issue Three.
            Having overruled Appellant’s issues presented for review, we affirm the trial court’s
judgment.

September 14, 2011
DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.